Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel:  702-420-2001
Fax: 305-437-7662
ecf@randazza.com

*Attorneys for Jane Doe*

FILED

MAY 16 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JCS

## IN THE UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

CV 18 80 080 MISC

ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, TYLER MAGILL, APRIL MUNIZ, HANNAH PEARCE, MARCUS MARTIN, JOHN DOE, JANE DOE 1, JANE DOE 2, and JANE DOE 3,

Plaintiffs,

vs.

JASON KESSLER, RICHARD SPENCER, CHRISTOPHER CANTWELL, JAMES ALEX FIELDS, JR., VANGUARD AMERICA, ANDREW ANGLIN, MOONBASE HOLDINGS, LLC, ROBERT "AZZMADOR" RAY, NATHAN DAMIGO, ELLIOT KLINE a/k/a/ ELI MOSELY, IDENTITY EVROPA, MATTHEW HEIMBACH, MATTHEW PARROTT a/k/a DAVID MATTHEW PARROTT, TRADITIONALIST WORKER PARTY, MICHAEL HILL, MICHAEL TUBBS, LEAGUE OF THE SOUTH, JEFF SCHOEP, NATIONAL SOCIALIST MOVEMENT, NATIONALIST FRONT, AUGUSTUS SOL INVICTUS, FRATERNAL ORDER OF THE ALT-KNIGHTS, MICHAEL "ENOCH" PEINOVICH, LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN, and EAST COAST KNIGHTS OF THE KU KLUX KLAN a/k/a EAST COAST KNIGHTS OF THE TRUE INVISIBLE EMPIRE,

Defendants.

Case No. _____

*(pending in the United States District Court for the Western District of Virginia, Case No. 3:17-cv-72)*

**NOTICE OF MOTION AND JANE DOE'S MOTION TO QUASH SUBPOENA FOR DOCUMENTS TO DISCORD, INC.; MEMORANDUM OF POINTS AND AUTHORITIES**

DATE:     TBD
TIME:      TBD
Hon.       TBD
CTRM:    TBD

RANDAZZA | LEGAL GROUP

FILED BY FAX

- 1 -
Motion to Quash Subpoena

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS ELIZABETH SINES, SETH ISPELWEY, MARISSA BLAIR, TYLER MAGILL, APRIL MUNIZ, HANNAH PEARCE, MARCUS, MARTIN, JOHN DOE, AND JANE DOES 1-3 AND ALL COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on _____ at _____ at _____ _____, Jane Doe hereby moves the District Court for the Northern District of California to quash the Subpoena for Documents to non-party Discord, Inc. issued by Plaintiffs on or around January 2, 2018 (the "Subpoena"), pursuant to Fed. R. Civ. P. 45(d)(3)(iii) and (iv); and Cal. Code Civ. Proc. § 1987.1. The Subpoena seeks subscriber information and "All documents and communications to, from, or concerning" Doe, in addition to 48 other accounts. The Subpoena was issued in support of a civil action filed in the United States District Court for the Western District of Virginia on October 11, 2017 captioned *Sines, et al., v. Kessler, et al.*, No. 3:17-cv-00072-NKM-JCH.  A date and time at which this motion in this miscellaneous action will be heard are yet to be determined.

As explained in the attached Memorandum of Points and Authorities, Doe is a political dissident who exercises her First Amendment-guaranteed rights of free speech and free association.  Due to Doe's political ideas being controversial, Doe engages in political discourse in an anonymous manner by using the handle "kristall.night" on Discord—which is a social media networking website.  Doe has a constitutional right to associate with people who think as she does and to engage in controversial political speech anonymously, and the Plaintiffs have no right to acquire her correspondence or information.  The subpoena also violates the Stored Communications Act by requesting the contents of online communications stored by Discord.

For purposes of First Amendment-related matters, standing is relaxed, and the Court should quash the subpoena at issue as it pertains to the other 48 Discord accounts, too. If the Court does not quash the subpoena as it pertains to the other 48 Discord accounts, then Doe's identity can nevertheless be exposed, which is anathema to the United States Constitution.

For the reasons set forth in Jane Doe's Memorandum of Points and Authorities in Support of Her Motion to Quash Subpoena for Documents to Discord, Inc., the Court can and should quash the subpoena at issue.

Dated: May 16, 2018.

Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058

*Attorneys for Jane Doe*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.0    INTRODUCTION AND STATEMENT OF FACTS**

Doe is a political dissident who exercises her First Amendment-guaranteed rights of free speech and free association.  Due to Doe's political ideas being controversial, Doe engages in political discourse anonymously by using the handle "kristall.night" on Discord—which is a social media networking website.

In the above-captioned civil action (the "Underlying Suit"), Plaintiffs have subpoenaed Discord, Inc. ("Discord") to acquire the subscriber information and "All documents and communications to, from, or concerning" Doe, in addition to 48 other Discord accounts (the "Subpoena").  (*See* subpoena to Discord, attached as **Exhibit 1**.)  To create an account on Discord, a user must provide an email address.  (*See* Discord "Register" page, attached as **Exhibit 2**.)[1]

Plaintiffs are attempting to identify people who espouse "Alt-Right" political views and who attended or were sympathetic with the Alt-Right activists who attended the notorious "Unite the Right" rally in Charlottesville, Virginia, on August 12, 2017 (the "Rally").  Plaintiffs bring multiple claims based on the alleged acts of the numerous named Defendants related to discussing and allegedly coordinating violence that occurred during the Rally, culminating with an automobile striking multiple protestors.  (*See, generally*, Amended Complaint, attached as **Exhibit 3**.)  Plaintiffs allege in the Amended Complaint that Defendants and unidentified "co-conspirators" used Discord to communicate with each other and coordinate their conduct at the Rally.  The Discord servers allegedly used by Defendants and their "co-conspirators" are not public.  (*See* **Exhibit 3** at ¶¶ 71-83.)  However, while the Amended Complaint makes numerous references to unidentified "co-conspirators," Plaintiffs do not actually name any

---

[1]   Available at: <https://discordapp.com/register> (last accessed May 15, 2018).

1  such individuals as "John Doe" defendants.  It is thus critically important to keep

2  in mind that Plaintiffs only bring claims against the named Defendants, and not

3  against Jane Doe or any of the other 48 unidentified Discord users.

4      Since Plaintiffs are not attempting to discover the identities of unnamed

5  Doe defendants, it appears that the Subpoena is merely attempting to obtain the

6  identities of third parties for the purpose of outing them as members of the "Alt-

7  Right."  Alt-Right activists who are outed for adhering to this controversial political

8  philosophy and/or for having attended the Charlottesville rally have been

9  disowned by their families and lost their jobs.  (*See* Jessica Suerth, "The white

10 nationalist whose father disowned him says family was doing the 'safest thing,'"

11 CNN (Aug. 15, 2017), attached as **Exhibit 4**;[2] *see also* Haley Britzky, "Charlottesville

12 marchers have been fired, disowned, arrested," AXIOS (Aug. 24, 2017), attached

13 as **Exhibit 5**;[3] *and see* ECF No. 244 in Underlying Suit, Declaration of John Doe in

14 Support of John Doe's Motion to Quash, attached as **Exhibit 6**, at ¶¶ 11-14.)

15 Groups opposed to members of the "Alt-Right" have a habit of "doxxing" these

16 individuals, a practice of revealing someone's personal information to the

17 general public.  (*See* Decca Muldowney, "Doxx Racists: How Antifa Uses Cyber

18 Shaming to Combat the Alt-Right," Pacific Standard (Nov. 2, 2017), attached as

19 **Exhibit 7**;[4] *see also* Steven Blum, "Doxxing White Supremacists is Making Them

20 Terrified," Vice (Aug. 15, 2017), attached as **Exhibit 8**.)[5] Organizations opposed to

21 members of the "Alt-Right," such as "antifa," are likely to physically harm Jane

22

23  [2]  Available  at:  <https://www.cnn.com/2017/08/15/us/dad-charlottesville-rally-letter-trnd/index.html> (last accessed May 15, 2018).

24  [3]  Available  at:  <https://www.axios.com/charlottesville-marchers-have-been-fired-disowned-arrested-1513305052-24ec82c9-0d70-496e-8889-8d309aa562e7.html>  (last  accessed

25 May 15, 2018).

26  [4]  Available at: <https://psmag.com/news/doxxing-the-alt-right-racists> (last accessed May 15, 2018).

27  [5]  Available  at:  <https://broadly.vice.com/en_us/article/7xxbez/doxxing-white-supremacists-is-making-them-terrified> (last accessed May 15, 2018).

RANDAZZA | LEGAL GROUP

1  Doe and other Discord users if their identities and political affiliations are revealed.
2  (*See* Paul M. Murphy, "White nationalist Richard Spencer punched during
3  interview," CNN (Jan. 21, 2017), attached as **Exhibit 9**;[6] *see also* Kyle Swenson,
4  "Black-clad Antifa members attack peaceful right-wing demonstrators in
5  Berkeley," Washington Post (Aug. 28, 2017), attached as **Exhibit 10**.)[7]

6      The Subpoena, or at least Document Request No. 7 of the Subpoena, thus
7  appears to be an abuse of process calculated solely for the purpose of causing
8  personal and reputational harm to people who espouse unpopular political
9  beliefs. Indeed, it is very likely that Jane Doe and the other 48 Discord users will
10 suffer the kind of harassment, injuries, and even physical harm alleged in the
11 Amended Complaint if their identities and communications are made publicly
12 available.

13     There is thus a substantial risk that disclosure of the identities and private
14 communications of Jane Doe and other Discord users, third parties against whom
15 Plaintiffs do not bring any claims, would result in a chilling effect by causing
16 members espousing an "Alt-Right" ideology and associating with groups that
17 espouse such ideologies from stating these views and from associating with such
18 groups. Furthermore, Plaintiffs' subpoena violates the Stored Communications
19 Act by broadly requesting both the identities of Discord users *and* the contents of
20 all their communications stored on that platform.

21     For the reasons set forth in this Brief, the Court can and should quash the
22 subpoena because political dissidents have a right to engage in controversial
23 political speech and to associate with like-minded people without being outed.

---

[6]  Available at: <https://www.cnn.com/2017/01/20/politics/white-nationalist-richard-spencer-punched/index.html> (last accessed May 15, 2018).
[7]  Available at: <https://www.washingtonpost.com/news/morning-mix/wp/2017/08/28/black-clad-antifa-attack-right-wing-demonstrators-in-berkeley/?utm_term=.47a8b9ee7d37> (last accessed May 15, 2018).

## 2.0    LEGAL STANDARDS

When a party seeks discovery that encroaches upon First Amendment freedoms, the party must show that the "information sought is *highly relevant* to the claims or defenses in the litigation – a more demanding standard of relevance than that under Federal Rule of Procedure 26(b)(1)." *Perry v. Schwarzenegger*, 591 F.3d 1126, 1141 (9th Cir. 2010) (emphasis added). The discovery request must also be "carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

The Court must also quash a subpoena if it "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). Similarly, under Cal. Code Civ. Proc. § 1987.1, a court may quash a subpoena and "make any other order as may be appropriate to protect the person from unreasonable or oppressive demands, including unreasonable violation of the right of privacy of the person." Section 1987.1(b)(5) specifically authorizes "[a] person whose personally identifying information . . . is sought in connection with an underlying action involving that person's exercise of free speech rights" to bring a motion to quash.[8]

Discord is located in San Francisco, California, and the Subpoena requires compliance in Oakland, California. This Court is the appropriate venue for this motion because Fed. R. Civ. P. 45 instructs that "the court for the district where compliance is required" has primary authority over all subpoena-related motions

---

[8]    While nominally procedural, the articulated protections for anonymous speakers in Cal. Code Civ. Proc. § 1987.1 are substantive and are based upon the same free speech concerns that animate California's Anti-SLAPP statute. *See, e.g., United States ex rel. Newsham v. Lockheed Missiles and Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (holding that California's Anti-SLAPP statute is substantive in design and intent and thus applies in federal court). Section 1987.1's protections thus apply to any non-federal claims based on the exercise of First Amendment rights, which is precisely what Plaintiffs' claims are.

RANDAZZA | LEGAL GROUP

1  made under that rule.  Fed. R. Civ. P. 45(d), (e), (f), (g); *see also United States ex*

2  *rel. Ortiz v. Mt. Sinai Hosp.*, 169 F. Supp. 3d 538, 543 (S.D.N.Y. 2016).

3  **3.0    ARGUMENT**

4     **3.1    Jane Doe Has Standing to Move to Quash the Subpoena on Behalf of**

5         **Herself and Those Similarly Situated as Her**

6       Fed. R. Civ. P. 45(d)(3)(a)(iii), (iv) requires a court to quash a subpoena, on

timely motion if it "requires disclosure of privileged or other protected matter," or

7  it "subjects a person to undue burden."  Though Jane Doe and the other 48

8  Discord users are not parties required to comply with the Subpoena, the

9  Subpoena seeks information about them, including information that could lead

10  to disclosure of their identities, as well as the contents of communications to and

11  from these users.  (*See* **Exhibit 1** at Request No. 7.)  Jane Doe is obviously affected

12  by the Subpoena, as it could lead to disclosure of such information as to her.  She

13  thus has standing to bring this motion.

14       Jane Doe also has standing to challenge not only the Subpoena as it

15  pertains to her, but for the other 48 similarly situated Discord users.  "Standing is

16  relaxed in the First Amended context 'because of a judicial prediction or

17  assumption that the policy's very existence may cause others not before the court

18  to refrain from constitutionally protected speech or expression.'"  *Faith Baptist*

19  *Church v. Waterford Township*, 522 Fed.Appx. 322, 330 (6th Cir. 2013) (quoting

20  *Berner v. Delahanty*, 129 F.3d 20, 24 (1st Cir. 1997) (quoting *Broadrick v. Oklahoma*,

21  413 U.S. 601, 612 (1973); *see also Sec. of State of Md. V. Joseph H. Munson, Co.,*

22  *Inc.*, 467 U.S. 947, 956-57 (1984).

23       Even if the Court finds that Jane Doe does not have standing to assert the

24  First Amendment rights of third parties, it may quash an improperly issued

25  subpoena *sua sponte*. *See Rodrigues v. Ryan*, 2018 U.S. Dist. LEXIS 33260, *5-6 (D.

26

27

RANDAZZA | LEGAL GROUP

1   Ariz. Feb. 28, 2018); *see also Elite Lightning v. DMF, Inc.*, 2013 U.S. Dist. LEXIS 201677

2   (C.D. Cal. May 6, 2013).

3   **3.2   The Subpoena Requires Disclosure of Privileged or Other Protected**
    **Matter and Subjects Jane Doe and Similarly Situated Users to Undue**
4   **Burden**

5   **3.2.1  The First Amendment Right to Anonymous Speech**

6       The Subpoena should be quashed in its entirety because it violates the First

7   Amendment rights to anonymous speech and association of Jane Doe and other

8   Discord users.  "It is now settled that 'an author's decision to remain anonymous,

9   like other decisions concerning omissions or additions to the content of a

10  publication, is an aspect of the freedom of speech protected by the First

11  Amendment.'"  *See Anonymous Online Speakers v. U.S. Dist. Court*, 661 F.3d 1168,

12  1173 (9th Cir. 2011) (quoting *Talley v. California*, 362 U.S. 60, 64-65 (1960)).  The

13  protections apply equally to speech on the Internet.  *See Reno v. ACLU*, 521 U.S.

14  844, 870 (1997); *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42

15  (1995); *and see Doe v. 2theMart.com*, 140 F. Supp. 2d 1088, 1093 (W.D. Wash.

16  2001) (finding "[t]he right to speak anonymously extends to speech via the

17  Internet.   Internet anonymity facilitates the rich, diverse, and far ranging

18  exchange of ideas").  Internet users also enjoy a First Amendment interest in their

19  Internet subscriber information.  *See Anonymous Online Speakers*, 661 F.3d at

20  1173; *see also Doe v. SEC*, 2011 U.S. Dist. LEXIS 132983, *8 (N.D. Cal. Nov. 17, 2011).

21      There is no doubt that Jane Doe—as well as the 48 other Discord users—

22  have controversial political ideas, and that if Discord complies with the Subpoena

23  said individuals will be outed.  Even if Discord users are not required to provide

24  their full names to create an account with the service, there is an extremely high

25  probability that a reader could learn the identity of a Discord user if they have

26  access to all communications to or from that user.  This can and will result in serious

27

harm to their personal and professional lives; specifically, there is a strong likelihood that they would lose their employment and/or be socially ostracized if their identities and the contents of their non-public messages are made public. (*See* **Exhibits 4-10**.)  This result would have an unconstitutional chilling effect on the First Amendment rights of these and other users; the fear of a service provider like Discord disclosing the identities and contents of communications that users thought were confidential would lead to a significant degree of self-censorship.

In *National Association for the Advancement of Colored People v. Patterson*, 357 U.S. 449 (1958), the United States Supreme Court ruled that a subpoena could not be used to identify the members of the NAACP because such would have a chilling effect on the First Amendment.  As was said by the Supreme Court:

> Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly. *De Jonge v. Oregon*, 299 U.S. 353, 364; *Thomas v. Collins*, 323 U.S. 516, 530. It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the "liberty" assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech.  *See Gitlow v. New York*, 268 U.S. 652, 666; *Palko v. Connecticut*, 302 U.S. 319, 324; *Cantwell v. Connecticut*, 310 U.S. 296, 303; *Staub v. City of Baxley*, 355 U.S. 313, 321.  Of course, it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny.

*NAACP*, 357 U.S. at 460-461.  While the group of users on the Discord servers Plaintiffs identify may not have all the formalities of the NAACP, it is no less an organization of like-minded individuals sharing their political beliefs and

RANDAZZA | LEGAL GROUP

1   advocating for social change, no matter how noxious Plaintiffs may find this

2   advocacy to be.

3       The degree of scrutiny a court should apply in determining whether a

4   party's interests outweigh these First Amendment interests depends on the nature

5   of the speech at issue.  *See Anonymous Online Speakers*, 661 F.3d at 1173.  First

6   Amendment protection is "at its zenith" when concerning "core political speech."

7   *Meyer v. Grant*, 486 U.S. 414, 422, 425 (1988).  While Plaintiffs assert that the

8   conduct of **Defendants** is unlawful, there are no similar allegations as to the

9   speech of Jane Doe or other Discord users.  The information requested by the

10  Subpoena consists of private online communications without any allegation of

11  such communications being in any way unlawful.  It quite obviously amounts to

12  nothing more than a fishing expedition so that Plaintiffs will be able to identify and

13  "doxx" people who espouse political beliefs with which Plaintiffs disagree.

14      Anonymous online speakers are entitled to a limited privilege under the First

15  Amendment, which a court **must** consider before allowing discovery.  *See Buckley*

16  *v. Am. Constitutional Law Found.*, 525 U.S. 182, 192 (1999); *Sony Music Entm't Inc.*

17  *v. Does 1-40*, 326 F. supp. 2d 556, 565 (S.D.N.Y. 2004); *Grandbouche v. Clancy*, 825

18  F.2d 1463, 1466 (10th Cir. 1987).  This Court has recognized that "[p]eople who

19  have committed no wrong should be able to participate online without fear that

20  someone who wishes to harass or embarrass them can file a frivolous lawsuit and

21  thereby gain the power of the court's order to discover their identity." *Columbia*

22  *Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

23      These concerns would require the Court to quash the Subpoena even if it

24  were directed solely at the individuals identified in the Subpoena.  That is not the

25  case here, however.   The Subpoena requests "[a]ll documents and

26  communications **to, from, or concerning**" these individuals.  (**Exhibit 1** at Request

27  No. 7.)  This means that the Subpoena seeks not only communications from the

- 8 -
Memorandum in Support of Motion to Quash Subpoena

identified Discord users, but also communications to anyone who either sent these users a message, received a message from these users, or who even talked about these users. The scope of the Subpoena thus potentially extends to thousands of unidentified individuals, many of whom likely have no relationship whatsoever with any party to this case or to the facts of the case. Despite this, the Subpoena seeks to violate the First Amendment right to anonymity and association for all of these users. The Constitution does not permit this.

### 3.2.2  Plaintiffs Cannot Overcome the Constitutional Right to Anonymity of Jane Doe and Other Non-Parties

Courts use a balancing test to determine when disclosure of a speaker's identity is appropriate. The Court should look to the 4-factor test for this scenario articulated in *Doe v. 2theMart.com*, 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001):

(1) The subpoena seeking the information was issued in good faith and not for any improper purpose;

(2) The information sought relates to a core claim or defense;

(3) The identifying information is directly and materially relevant to that claim or defense; and

(4) Information sufficient to establish or to disprove that claim or defense is unavailable from any other source.

This Court has approved of the *2theMart.com* test where, as here, a subpoena seeks identifying information of non-parties. The Ninth Circuit has also found that an even higher standard is appropriate where a subpoena is directed at political speech, and that a plaintiff must be able to withstand a hypothetical motion for summary judgment for disclosure to be appropriate. *See Anonymous Online Speakers*, 661 F.3d at 1176-77. Under either standard, Plaintiffs fail.

First, the Subpoena was not issued in good faith. It seeks the personal identifying information and personal communications of non-parties who express

- 9 -
Memorandum in Support of Motion to Quash Subpoena

unpopular political views.  Plaintiffs are not attempting to uncover the identities of additional defendants, as the Amended Complaint does not name any Doe defendants.  It is clear that Plaintiffs are simply looking for a way to uncover the names and personal information of "Alt-Right" adherents so that they can then subject such people to threats of harassment, violence, and loss of personal and professional reputation.  The Subpoena is a fishing expedition with the ultimate goal of destroying the lives of people Plaintiffs do not like, even though these people have done nothing to harm Plaintiffs.  This intent is obvious given the scope of the Subpoena.  As discussed in Section 3.2.3, *infra*, the Subpoena seeks the information of anyone who has ever communicated with Jane Doe or other Discord users, whether or not those communications have anything to do with the "Alt-Right" movement or the Rally.

Second and third, Plaintiffs must show that the requested information relates to a core claim or defense and that the identifying information is directly and materially relevant to that claim or defense.  *See 2theMart.com*, 140 F. Supp. 2d at 1096.  It is impossible to determine how many people are likely to be caught up in the Subpoena's dragnet if Discord complies with it, since it could require production of communications from thousands of Discord users completely unrelated to this case or any of the parties.  There is no possible explanation as to how more than a small fraction of the requested information could possibly be relevant to any claim or defense, particularly since Plaintiffs' Amended Complaint does not name any unidentified Discord users as John or Jane Doe defendants.

Fourth, there is no indication that the requested information is unavailable from any other source.  Plaintiffs have identified numerous Defendants that they claim orchestrated the Rally.  They have not named any John Doe or Jane Doe defendants.  This means that named Defendants were a party to any communication relevant to Plaintiffs' claims.  Thus, Plaintiffs may obtain any

1    relevant communications from Plaintiffs, rather than asking Discord to produce
2    the entire Discord message histories of non-parties.

3         Plaintiffs' Subpoena violates the First Amendment rights of Jane Doe and
4    other non-parties, and must be quashed.

### 3.2.3  The First Amendment Right to Association

6         Individuals have a First Amendment right to associate and express political
7    views as a group. *See NAACP v. Alabama*, 357 U.S. 449, 460-62 (1958) (overturned
8    on unrelated grounds in *NAACP v. Alabama*, 360 U.S. 240 (1959)). This is a right
9    intertwined with freedom of expression and "like free speech, lies at the
10   foundation of a free society." *Buckley v. Valeo*, 424 U.S. 1, 25 (1976). This is a
11   critical constitutional protection because "[e]ffective advocacy of both public
12   and private points of view, particularly controversial ones, is undeniably
13   enhanced by group association." *NAACP v. Alabama*, 357 U.S. at 460. The
14   Supreme Court has found that disclosure of membership lists can harm freedom
15   of association because "it may induce members to withdraw from the association
16   and dissuade others from joining it because of fear of exposure of their beliefs
17   shown through their associations and of the consequences of their exposure." *Id.*
18   at 462-63; *see also Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960); *and see*
19   *Gibson v. Florida Legislative Investigation Comm.*, 372 U.S. 539 (1963). Anonymity
20   in group membership is linked to the freedom of association, particularly where
21   the group in question has unpopular views; "[i]nviolability of privacy in group
22   association may in many circumstances be indispensable to preservation of
23   freedom of association, particularly where a group espouses dissident beliefs."
24   *NAACP v. Alabama*, 357 U.S. at 462.

25        Plaintiffs' Subpoena seeks "[a]ll documents and communications to, from,
26   or concerning the following individuals, **including user information** about the
27   following individuals' Discord accounts, as well as any images or documents

posted by the following individuals." (**Exhibit 1** at Request No. 7) (emphasis added.) At the very least, the Subpoena seeks the email addresses of Jane Doe and 48 other individuals used to create accounts with Discord. (*See* **Exhibit 2**.) There is also likely to be a substantial amount of personally identifying information contained within the private communications between these individuals and other non-parties. While many, perhaps even most, Americans disagree with the goals espoused by members of the "Alt-Right," the movement's members have a right to political advocacy, and a right to do so anonymously.

### 3.2.4   Plaintiffs Cannot Overcome the First Amendment Right of Association of Jane Doe and Other Non-Parties

The First Amendment right to association is not absolute, and "[i]nfringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Robers v. U.S. Jaycees*, 468 U.S. 609, 623 (1984). The government must justify intrusion on this right when governmental action "would have the practical effect 'of discouraging' the exercise of constitutionally protected political rights." *NAACP*, 357 U.S. at 461 (quoting *Am. Commc'ns Ass'n v. Douds*, 339 U.S. 382, 393 (1950). Because such actions have a chilling effect on the exercise of First Amendment rights, they "must survive exacting scrutiny." *Buckley*, 424 U.S. at 64.

The Ninth Circuit has a two-part test for determining whether a First Amendment privilege applies in discovery. The party asserting the privilege "must demonstrate . . . a 'prima facie showing of arguable first amendment infringement.'" *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (quoting *United States v. Trader's State Bank*, 695 F.2d 1132, 1133 (9th Cir. 1983) (per curiam)). The party must show "that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or

1   discouragement of new members, or (2) other consequences which objectively

2   suggest an impact on, or 'chilling' of, the members' associational rights." *Id.* at

3   350. Next, the party seeking discovery must "demonstrate that the information

4   sought through the [discovery] is rationally related to a compelling governmental

5   interest . . . [and is] the 'least restrictive means' of obtaining the desired

6   information." *Id.* Specifically, the Ninth Circuit balances the interests of the parties

7   and takes into account (1) "the importance of the litigation;" (2) "the centrality

8   of the information sought to the issues in the case;" (3) "the existence of less

9   intrusive means of obtaining the information;" and (4) "the substantiality of the

10  First Amendment interests at stake." *Perry*, 591 F.3d at 1140-41. The party seeking

11  discovery also "must show that the information sought is highly relevant to the

12  claims or defenses in the litigation – a more demanding standard of relevance

13  than that under [Fed. R. Civ. P.] 26(b)(1).[9] The request must also be carefully

14  tailored to avoid unnecessary interference with protected activities, and the

15  information must be otherwise unavailable." *Id.* at 1141.

16          There is no question here that Discord's compliance with the Subpoena will

17  cause substantial First Amendment harm to Jane Doe and other non-parties.

18  These parties have an objectively reasonable fear of being subjected to

19  harassment, physical violence, loss of employment, and destruction of personal

20  relationships if their affiliation with the "Alt-Right" is made public. (*See* **Exhibits 4-**

21  **10**.) Compliance with the Subpoena would also have the inevitable effect of

22  causing members of this political movement to withdraw from it to avoid such

23  consequences in the future. Jane Doe thus satisfies her burden under the first

24  prong of this analysis. The burden now shifts to Plaintiffs.

25

26      [9]   It is important to note that *Perry* was decided in 2010, before the current version of Rule 26
        introduced the "proportionality" requirement in discovery. It would thus appear that the burden
27      on the party seeking discovery to provide relevance has only increased over time.

RANDAZZA | LEGAL GROUP

The second prong of the right of association test is similar to the *2theMart.com* test. For the reasons explained in Section 3.2.2, *supra*, Plaintiffs cannot meet their burden under this prong. Plaintiffs' subpoena is wildly overbroad and seeks little to no information relevant to any claim or defense. The only relevant information exchanged on Discord consists of communications to which the named Defendants are a party, and thus can be obtained through conventional discovery on Defendants, rather than non-parties. The First Amendment issues presented by the Subpoena are also significant; if the Court requires Discord to comply with the Subpoena, it will give free license to plaintiffs to file only nominally meritorious suits based on disfavored speech (regardless of whether anything about the speech is actionable) and then use the discovery process to expose the identities of authors of unpopular speech. The First Amendment right to association is meant to avoid exactly this outcome, and the Court must quash Plaintiffs' Subpoena.

### 3.2.5  The Subpoena is Grossly Disproportionate, Overbroad, and Unduly Burdensome

Document Request No. 7 of the Subpoena requests "[a]ll documents and communications to, from, or concerning the following individuals, including user information about the following individuals' Discord accounts, as well as any images or documents posted by the following individuals." (*See* **Exhibit 1** at Document Request No. 7.) Constitutional concerns aside, this request is problematic for multiple reasons. A court may quash a subpoena that is overbroad or seeks irrelevant information. *See Grand Jury Subpoena v. Kitzhaber*, 828 F.3d 1083, 1088 (9th Cir. 2016) (finding that subpoena requesting electronic communications not within scope of legitimate government concern could not be enforced);

- 14 -
Memorandum in Support of Motion to Quash Subpoena

Fed. R. Civ. P. 26(b) defines the scope of discovery, and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense **and proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, **the importance of the discovery in resolving the issues**, and whether the burden or expense of the proposed discovery outweighs its likely benefits." Because Plaintiffs' Subpoena seeks information related to First Amendment-protected activities, Plaintiffs must go beyond the requirements of Rule 26 and show that the requested information is "highly relevant" to claims or defenses. *Perry*, 591 F.3d at 1141. The discovery request must also be "carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id*. Plaintiffs' request completely fails this test.

Request No. 7 is not in any way limited in scope. Plaintiffs' claims, to the extent they involved Discord, are based on alleged coordination of violent conduct at the Rally through Discord on specific Discord servers. However, Request No. 7 is not limited to this subject matter, and instead seeks all communications to or from several Discord accounts, whether or not such communications are in any way related to the events alleged in the Amended Complaint. It thus calls for private communications on every possible subject, and requires disclosure of communications on both personal and private matters with no bearing whatsoever on this case. There is no possibility that this request is "proportional to the needs of the case" given that it explicitly requests mounds of irrelevant information.

Even worse, the request seeks all communications "to, from, or concerning" the operators of the Discord accounts, meaning that necessarily requests communications by additional third parties that likely have no relationship

whatsoever with any party to this case or even any of the facts of this case. If a personal friend of Jane Doe's sent her a recipe for chocolate cake over Discord, the Subpoena would require disclosure of it, prejudicing both Jane Doe's rights and those of her friend.

The patently abusive scope of the Subpoena is similar to the subpoena at issue in *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004). The plaintiff in that case sent a subpoena to a defendant's email host, demanding all of the defendant's emails without limiting the scope temporally or to litigation's subject matter. *See id.* at 1071. The Ninth Circuit recognized this practice as abusive, noting that "[o]ne might have thought . . . that the subpoena would request only e-mail related to the subject matter of the litigation, or may messages sent during some relevant time period, or at the very least those sent to or from employees in some way connected to the litigation." *Id.*

The Subpoena is improper under Fed. R. Civ. P. 26. The Court must quash it.

### 3.3 The Court Should Quash the Subpoena Because it Violates the Stored Communications Act

The Stored Communications Act (the "SCA"), 18 U.S.C. § 2702, prohibits any "person or entity providing an electronic communication service to the public" from "knowingly divulge[ing] to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a). Document Request No. 7 of the Subpoena requests "[a]ll **documents and communications** to, from, or concerning the following individuals, including user information about the following individuals' Discord accounts, as well as any **images or documents** posted by the following individuals." (*See* **Exhibit 1** at Document Request No. 7) (emphasis added.) The sweep of this document request is broad, and by its plain terms includes identifying information related to Discord accounts and the contents of communications both to and from

individuals operating these accounts.  Thus, Discord may be civilly liable if it complies with the Subpoena.  *See* 18 U.S.C. § 2707 (conferring standing on any "subscriber, or other person aggrieved by any violation of this chapter" to bring a private action for violations).  Plaintiffs and their counsel may even be civilly liable if Discord complies with the Subpoena.

**4.0     CONCLUSION**

For the foregoing reasons, the Court should grant this motion and quash Plaintiffs' Subpoena.

Dated: May 16, 2018.             Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058

*Attorneys for Jane Doe*

Case No. _____

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of May 2018, I served a true and correct copy of the foregoing document upon counsel listed below via electronic mail and U.S. Mail:

Catherine M. del Fierro
PERKINS COIE LLP
1201 Third Ave., Ste. 4900
Seattle, WA 98101
CdelFierro@perkinscoie.com

*Attorney for Discord, Inc.*

Roberta A. Kaplan
Julie E. Fink
KAPLAN & COMPANY, LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
rkaplan@kaplanandcompany.com
jfink@kaplanandcompany.com

Philip M. Bowman
BOIES SCHILLER FLEXNER LLP
575 Lexington Ave.
New York, NY 10022
pbowman@bsfllp.com

David E. Mills
COOLEY LLP
1299 Pennsylvania Avenue NW Ste. 700
Washington, DC 20004
dmills@cooley.com

*Attorneys for Plaintiffs*

Robert T. Cahill
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
rcahill@cooley.com

Karen L. Dunn
William A. Isaacson
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
kdunn@bsfllp.com
wisaacson@bsfllp.com

Alan Levine
COOLEY LLP
1114 Avenue of the Americas, 46th Fl.
New York, NY 10036
alevine@cooley.com

*Attorneys for Plaintiffs*

Respectfully submitted,

Employee,
Randazza Legal Group, PLLC

Memorandum in Support of Motion to Quash Subpoena