1  Sean Phillips Rodriguez (SBN 262437)
   BOIES SCHILLER FLEXNER LLP
2  1999 Harrison Street, Suite 900
   Oakland, CA 94612
3  Phone: (510) 874-1000
   Facsimile: (510) 874-1460
4  srodriguez@bsfllp.com

5  Joshua J. Libling (*pro hac vice* to be filed)
   BOIES SCHILLER FLEXNER LLP
6  575 Lexington Avenue
   New York, New York 10022
7  Phone: (212) 446-2300
   Facsimile: (212) 446-2350
8  jlibling@bsfllp.com

9  *Attorneys for Plaintiffs in the Underlying Action*

10

11

12              **UNITED STATES DISTRICT COURT**

13             **NORTHERN DISTRICT OF CALIFORNIA**

14                **SAN FRANCISCO DIVISION**

15

16  *IN RE:  Motion of Non-Party JANE DOE,*          Case No.  3:18-mc-80080-JCS

17                                                   **PLAINTIFFS' MEMORANDUM OF
18  ELIZABETH SINES, et al.,                         LAW IN OPPOSITION TO JANE
                                                     DOE'S MOTION TO QUASH
             Plaintiffs,                             SUBPOENA FOR DOCUMENTS
19                                                   TO DISCORD, INC.**
20  v.
                                                     Judge:        Spero, C.M.J.
21  JASON KESSLER, et al.,                           Courtroom:    G

22           Defendant.

23

24

25

26

27

28

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................2

Background ...............................................................................................................1

    I.      Discord And Its Use In The Conspiracy ........................................................3

    II.     Jane Doe's Involvement on Discord .............................................................7

    III.    The Subpoena and Meet-and-Confers with Discord ....................................8

Legal Standard.........................................................................................................10

Argument.................................................................................................................10

    I.      Doe Lacks Standing To Move To Quash the Subpoena. ..............................10

    II.     Doe Cannot Establish Any Ground for Quashing the Subpoena. .................12

           A.     The Discovery Sought Is Relevant, Necessary, and Proportional to the.13

                    Needs of the Case. ....................................................................13

           B.     The Potential Hardship to Doe Is Insubstantial.....................................16

Conclusion...............................................................................................................20

# TABLE OF AUTHORITIES

**CASES**

*A. Farber & Partners, Inc. v. Garber*
234 F.R.D. 186 (C.D. Cal. 2006) ....................................................................................17

*Al Noaimi v. Zaid*
No. 11-1156-EFM, 2012 WL 4758048 (D. Kan. Oct. 5, 2012) ...........................................14

*ATS Prods., Inc v. Champion Fiberglass, Inc.*
309 F.R.D. 527 (N.D. Cal. 2015) ............................................................................... passim

*Brock v. Local 375, Plumbers International Union of America, AFL-CIO*
860 F.2d 346 (9th Cir. 1988)..................................................................................19, 20

*Buckley v. American Constitutional Law Foundation, Inc.*
525 U.S. 182 (1999) ............................................................................................18

*Columbia Ins. Co. v. seescandy.com*
185 F.R.D. 573 (N.D. Cal. 1999) ..................................................................................18

*Dale Evans Parkway 2012, LLC v. Nat'l Fire & Marine Ins. Co.*
No. EDCV15979JGBSPX, 2016 WL 7486606 (C.D. Cal. Oct. 27, 2016)............................11

*Del Campo v. Kennedy*
236 F.R.D. 454 (N.D. Cal. 2006) .............................................................................10, 12

*Doe I v. Individuals*
561 F. Supp. 2d 249 (D. Conn. 2008) ..........................................................................18

*Doe v. 2TheMart.com Inc.*
140 F. Supp. 2d 1088 (W.D. Wash. 2001) .....................................................................18

*Drummond Co. v. Collingsworth*
No. 13MC80169JSTJCS, 2013 WL 6074157 (N.D. Cal. Nov. 18, 2013) ......................11, 14

*Exxon Shipping Co. v. U.S. Dep't of Interior*
34 F.3d 774 (9th Cir. 1994)....................................................................................10, 12

*Faith Baptist Church v. Waterford Township*
522 F. App'x 322 (6th Cir. 2013) .................................................................................11

*Flagg v. City of Detroit*
252 F.R.D. 346 (E.D. Mich. 2008)................................................................................14

*Hinkle v. City of Clarksburg, W. Va.*
81 F.3d 416 (4th Cir. 1996)........................................................................................2

*In re Anonymous Online Speakers*
661 F.3d 1168 (9th Cir. 2011).................................................................................17, 18

*In re Grand Jury Subpoena*
828 F. 3d. 108 (9th Cir. 2016)......................................................................................15

*In re Heritage Bond Litig.*
   No. CV 02-1475-DT(RCX), 2004 WL 1970058 (C.D. Cal. July 23, 2004) ...........................17

*In re Yassai*
   225 B.R. 478 (Bankr. C.D. Cal. 1998) ...................................................................................10

*Mackelprang v. Fidelity Nat'l Title Agency of Nev., Inc.*
   No. 2:06-CV-00788-JCM-GWF, 2007 WL 119149 (D. Nev. Jan. 9, 2007) .........................14

*McLaughlin v. Serv. Emps. Union, AFL-CIO, Local 280*
   880 F.2d 170 (9th Cir. 1989) .................................................................................................20

*Mintz v. Mark Bartelstein & Assocs., Inc.*
   885 F. Supp. 2d 987 (C.D. Cal. 2012).....................................................................................14

*NAACP v. Patterson*
   357 U.S. 449 (1958) ................................................................................................................20

*Perry v. Schwarzenegger*
   591 F.3d 1126 (9th Cir. 2009)................................................................................................20

*Proficio Mortg. Ventures, LLC v. Fed. Sav. Bank*
   No. 2:15-CV-510-RFB-VCF, 2016 WL 1465333 (D. Nev. Apr. 14, 2016) .........................10

*Salem Vegas, L.P. v. Guanci*
   No. 2:12-CV-01892-GMN, 2013 WL 5493126 (D. Nev. Sept. 30, 2013) ...........................10

*Sec'y of State of Md. v. Joseph H. Munson Co.*
   467 U.S. 947 (1984) ................................................................................................................11

*Super Vitaminas, S. A.*
   No. 17-MC-80125-SVK, 2017 WL 5571037 (N.D. Cal. Nov. 20, 2017)..............................15

*Theofel v. Farey-Jones*
   359 F. 3d. 1066 (9th Cir. 2004)..............................................................................................15

*United States* v. *Roof*
   225 F. Supp. 3d 438 (D.S.C. 2016) ..........................................................................................2

**STATUTES**

18 U.S.C. § 2510 ..........................................................................................................................12

18 U.S.C. § 2701 ..........................................................................................................................11

18 U.S.C. § 2702 ....................................................................................................................12, 14

18 U.S.C. § 2711 ..........................................................................................................................12

42 U.S.C. § 1985 ............................................................................................................................2

42 U.S.C. § 1986 ............................................................................................................................2

Va. Code § 8.01-42.1 .....................................................................................................................2

**OTHER AUTHORITIES**

U.S. Const. amend. I ......................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 26 ................................................................................10, 12, 13, 14

Fed. R. Civ. P. 45 ......................................................................................... *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Elizabeth Sines, *et al.*, Plaintiffs in the underlying action *Sines v. Kessler*, No. 17-CV-72 (W.D. Va.) (the "Virginia Action"), referred to herein as "Plaintiffs," respectfully request that the Court deny Jane Doe's Motion to Quash Subpoena for Documents to Discord, Inc., ECF No. 1 (the "Motion to Quash," "Motion," or "Mot.").

## BACKGROUND

Jane Doe moves to quash a non-party subpoena (the "Subpoena") that Plaintiffs served on Discord, Inc. ("Discord") in the Virginia Action on January 2, 2018. Plaintiffs issued the subpoena to gather evidence related to Defendants' coordination and planning of the events known as "Unite the Right" in Charlottesville, Virginia, on August 11 and 12, 2017. *See* Libling Decl. Ex. 1 (First Amended Complaint ("FAC")); Libling Decl. Ex. 2 ("Subpoena"). Doe seeks to quash the subpoena not just as to herself, but apparently as to anyone whose information may be sought from Discord. Mot. 5.

The Virginia Action alleges, *inter alia*, a conspiracy to commit violence toward and to intimidate Plaintiffs and other individuals in Charlottesville on August 11 and 12. The so-called Unite the Right project was so violent and chaotic that the Governor of Virginia declared a state of emergency before the events were even slated to officially begin. FAC ¶ 224. Ultimately, three people died, and one Defendant in the Virginia Action is currently being held in custody pending charges of first-degree murder for driving his car into a group of protesters. FAC ¶¶ 23, 278. Plaintiffs in the Virginia Action are racial and religious minorities and supporters of minorities who were physically and emotionally harmed by the events in Charlottesville, including sustaining injuries such as a broken leg and ankle, skull fracture, and concussion. FAC ¶¶ 17-18. Defendants intended to do violence toward and intimidate the Plaintiffs—and other minorities—through Unite the Right, and that Defendants planned the events to ensure such violence and intimidation. FAC ¶¶ 3, 5, 61, 68, 98, 120, 188, 335. Defendants were motivated by racial and religious animus. FAC ¶¶ 336-343. They intended to discriminatorily deprive racial and religious minorities and their supporters of their fundamental rights. *Id.*

Plaintiffs in the Virginia Action assert conspiracy to violate Plaintiffs' civil rights in contravention of 42 U.S.C. § 1985(3); failure to prevent that conspiracy under 42 U.S.C. § 1986; civil conspiracy under Virginia law; negligence per se under Virginia law; subjecting Plaintiffs to violence and intimidation in violation of Virginia law; and assault, battery, and intentional infliction of emotional distress under Virginia law. *See* FAC ¶¶ 336-70. Among the elements of those causes of action are that Plaintiffs must prove that Defendants "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan," *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996); that Defendants' conspiracy had "the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," 42 U.S.C. § 1985(3), which can be proven through "racially motivated violence," *United States v. Roof*, 225 F. Supp. 3d 438, 448 (D.S.C. 2016); that Defendants were responsible for "intimidation or harassment" or "violence," Va. Code § 8.01-42.1; and that Defendants' actions were "motivated by racial, religious, or ethnic animosity," Va. Code § 8.01-42.1.

Discovery in the Virginia Action is governed by an Order for the Production of Documents and Exchange of Confidential Information ("Protective Order") under which a "Producing Party may designate as Confidential any information that the Producing Party, in good faith, believes should be protected from public disclosure," and a "Producing Party may designate as Highly Confidential any information including, but not limited to, personal information such as Social Security numbers, home addresses, telephone numbers, tax returns, non-party surnames and medical, investment, credit and banking information of any person, that the Producing Party, in good faith, believes should be protected from disclosure to those not permitted to receive Highly Confidential Information." Libling Decl. ¶ 5, Ex. 3 at ¶ 3(a)-(b).[1] The Protective Order provides that Confidential Information may only be shown to the parties, their counsel, expert witnesses or consultants retained by the parties, trial or deposition

---

[1] The term "Producing Party" includes "the parties to [the Virginia Action] and any third parties producing Confidential or Highly Confidential Information, or the party asserting the confidentiality privilege, as the case may be." Libling Decl. ¶ 5, Ex. 3 at ¶ 3(c).

witnesses, stenographers and videographers used at deposition, the Court, and others as agreed in writing by the parties. *Id.* ¶ 4. Highly Confidential Information may only be shown to counsel, expert witnesses retained by the parties, stenographers and videographers, the Court, and others as agreed in writing. *Id.* ¶¶ 4-5.

## I.     Discord And Its Use In The Conspiracy

Communications using social-networking services offered by Discord are at the core of the Virginia conspiracy. Discord hosts private, invite-only "servers" that allow for instant group discussion. FAC ¶ 71. Each server is organized into "channels" by topic. *Id.* Discord was "used extensively to plan and direct illegal acts" during the events of August 11 and 12, 2017. *Id.* The Defendants in the Virginia Action established a "Charlottesville 2.0" server, among others, and at least 43 "channels" on the Charlottesville 2.0 server were used for planning and coordination of Unite the Right. FAC ¶¶ 72, 76. The Defendants used Discord to post instructions for participants (including what uniforms to wear, what weapons to bring, and contingency plans for "tak[ing] the ground by force"), delegate responsibilities (such as organizing transportation), share materials promoting the event, coordinate logistics, and otherwise plan, implement, and operate the conspiracy. FAC ¶¶ 75, 78-81, 90, 100-101, 112, 114-115, 125, 130, 147, 152, 188-190.

The Defendants in the Virginia Action include moderators and managers of the Charlottesville 2.0 and other Discord servers in addition to participants on those servers and channels. FAC ¶¶ 73-75. "Leadership" meetings were conducted through Discord. *Id.* The Charlottesville 2.0 and other relevant servers were closed to the public. FAC ¶ 72. One participant described Discord as "for closed, top super secret communications intended for the elite inner circle of the alt-right." *Id.* (another user explained, "[T]his isn't a public server. It's invite only through our trusted, pre-vetted alt-right servers").

The statements from Discord quoted in the FAC show that Defendants and their coconspirators planned for violence and intimidation and were motivated by racial and religious animus. FAC ¶¶ 90, 95-97, 102-120. For example, Defendants and coconspirators stated:

- "This is not an attack on your heritage this is an attack on your racial existence. FIGHT BACK OR DIE."
- "FIGHT UNTIL THE LAST DROP."
- "When can we gas the reprobates[?]"
- "I'm ready to crack skulls."
- "If you don't have a flame thrower you're wrong."
- "It's going to get wild. Bring your boots."
- "Studies show 999/1000 niggers and feminists fuck right off when faced with pepper spray."
- "[F]ocus on blocking and pushing back in ways that don't look like assault."
- "Let's make this channel great again. The Carolinas (kind of) started the Revolutionary War and the Civil War, so why not add the Race War / Second Civil War to the list?"

FAC ¶¶ 90, 95-97.

Defendants and coconspirators urged followers via Discord to bring weapons to Charlottesville. Defendant Kessler, a Unite the Right organizer, told followers to "bring picket sign post, shields and other self-defense implements which can be turned from a free speech tool to a self-defense weapon should things turn ugly." FAC ¶ 112. Coconspirators also stated:

- "I'm conceal carrying."
- "[A] real man knows how to make a shield a deadly weapon."
- "[R]emember that newspapers can be your greatest ally / toss a few pennies in there, roll it up and fold it and bam."
- "[A]void batons . . . just get hardwood dowel (that fits in your hand) from a store and cut it to size."
- "If you get PVC get schedule 80 for thicker thumping."
- "Don't carry anything that's explicitly a weapon. Flag poles and signs work, but openly carrying obvious weaponry is probably not a good idea."

1   • "A wrench with a wrist lanyard gets the same job [as a blackjack/billyclub]
2       accomplished."

3   • "Just carry a pocket full of rocks. They can be in a sock or something."

4   FAC ¶ 111.

5       One coconspirator posted on Discord a fake advertisement for a product that looked like

6   pepper spray called "Nig-Away," a "nigger-killer" that promised to "kill[] on contact" in order

7   to "rid the area of niggers":



18  //
19  //
20  //
21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

*Id.*  And a member of Defendant Vanguard America posted a violent drawing of Defendant

Heimbach wearing a shirt bearing Nazi symbols and the words "NIGGER KILLER," smiling in

front of decapitated black men:



FAC ¶ 116.

Statements on Discord also provide evidence of Defendants' conspiratorial agreement

with other Defendants and coconspirators.  Ahead of the torch march on Friday, August 11,

Defendants and coconspirators established a "#friday_night" channel to coordinate and

determine attendance, dress code, to make plans, and to instruct coconspirators to bring torches.

FAC ¶¶ 145, 147.  Defendants also used Discord to organize the August 12 events.  For

example, Defendant Kessler instructed Discord participants, "EVERYONE needs to get to the

park as early as possible" on August 12 to "defend our territory."  FAC ¶ 190; *see* FAC ¶ 189

(coconspirators exhorted attendees to arrive before the park opened to form "a white bloc

barrier or square around the entire statue + podium . . . . given that they know we're coming,

we'll all need as many people as possible to be there right when the park opens").

Similarly, once the weekend of August 11 and 12 arrived, Defendants and

coconspirators used Discord to coordinate and plan the violence and intimidation.  On Friday,

August 11, Defendant Mosley instructed coconspirators using Discord to "start assembling at nameless field right now with your torches to start staging." FAC ¶ 152. A coconspirator exhorted those in attendance on August 11 to "PHYSICALLY REMOVE" protesters who were "surrounded by hundreds of fascists" with "[n]o police" protection. FAC ¶ 167. On August 12, a member of Defendant Vanguard America told followers on Discord to "[j]ust incite a riot already." FAC ¶ 218.

The evidence in the FAC—as compelling as it is—consists only of snapshots made available through a partial leak of Defendants' and coconspirators' communications leading up to and during the weekend of August 11 and 12. Libling Decl. ¶ 6. Certain Discord channels, such as the one for the "leadership" of the Unite the Right planners, have not been made public. FAC ¶ 83. As a coconspirator admitted, what was made public was "the general chat not the leadership though so they got very little in the way of planning or infrastructure." FAC ¶ 83 n.6. Plaintiffs have more recently become aware of additional relevant servers, but lack access to most messages on those servers, and further servers and channels likely remain entirely undisclosed.

## II.    Jane Doe's Involvement on Discord

Among the individuals named in Request 7 of the Subpoena was the Jane Doe who filed this motion to quash, known on Discord by the alias "kristall.night," which appears to be a reference to the Nazis' infamous Kristallnacht pogroms prior to World War II. Subpoena Req. 7(z). Doe's relevant statements fall into several categories:

(i)    She participated in the planning of Unite the Right by instructing others to "[p]urchase self defense insurance," "[g]et there before dark" on Friday, August 11, for the torch march, and, during the rally itself, informing other Discord users that a "shield wall should be at the ready in case these people get pushed in your direction." FAC ¶ 105; Libling Decl. ¶ 8, Exs. 10, 15-16.

(ii)    She made statements on the Charlottesville 2.0 server indicating intent to perpetrate violence and intimidation, including stating, "If you want people to fight in the streets, you don't attract them by being nice," telling another Discord participant that they

could recruit others "[b]y fighting, and inspiring others to do the same," characterizing Unite the Right and a precursor event in May 2017 as "violent political rallies," instructing others to bring "shields" and "a helmet" but not "weapons you're inexperienced with using in a fight in a crowded area," advising others on which flagpoles would be "useful to double as spears," and encouraging others to bring a short flagpole "if you want to use it as a club." Libling Decl. ¶ 8, Ex. 8-9, 11-14.

(iii)    She made statements confirming the conspiracy's racial and religious animus. For example, she asked "Can we please start chasing these fucking degenerates into hiding?" Libling Decl. ¶ 8, Ex. 5.  She declared, "Without complicit whites, Jews wouldn't be a problem," and "I hate miscegenation so much more after actually talking to mixed race people about their identity." *Id.*, Exs. 6-7.

## III.    The Subpoena and Meet-and-Confers with Discord

Much of the relevant material on Discord was removed by Discord on August 14, 2017, immediately after the Unite the Right rally.  Libling Decl. ¶¶ 7, 9, Ex. 4.  Even the Defendants in the Virginia Action, therefore, do not have access to some of the most relevant discovery in that case.  Discord, however, does—primarily through backup tapes it holds.  Libling Decl. ¶¶ 9-10.  Thus, the full record of the communications of Defendants and their coconspirators—*i.e.*, highly significant evidence of the conspiracy to do violence and intimidate motivated by racial and religious animus—is available only through Discord.

On January 2, 2018, Plaintiffs served Discord with the Subpoena.  Libling Decl. ¶ 4, Ex. 2.  Plaintiffs sought, *inter alia*, documents and communications concerning Unite the Right, as well as precursors to the event involving many of the same individuals.  Subpoena Reqs. 2-5.  Plaintiffs also sought documents and communications made in certain Discord servers and channels relevant to the events in Charlottesville.  Subpoena Req. 6.  In Request 7, Plaintiffs also requested documents and communications to, from, and concerning Defendants and individuals who Plaintiffs allege—based on already-released Discord messages—to be involved in planning Unite the Right.  Subpoena Req. 7.  Plaintiffs named certain of those Defendants and individuals, and referred to others by their Discord aliases.  *Id.*

Since service of the Subpoena, Plaintiffs have engaged in continued good-faith negotiations with Discord. Libling Decl. ¶¶ 9-15. First, Discord confirmed that it had deleted the data associated with the four relevant servers named in Plaintiffs' Subpoena (Charlottesville 2.0, Altright.com, Anticom, and Southern Front), but explained that it had created weekly backup tapes that likely included data from those servers. Libling Decl. ¶¶ 9-12. After further relevant servers came to light—including "Front and Center," "Operation Wolverine," and "MI Goy Scouts – Official"—Discord confirmed that those servers too were deleted but that their data should be available through weekly backup tapes. Libling Decl. ¶ 9 n.1.

In March 2018, Discord restored a database containing certain "user account information" sufficient to begin identification of user accounts associated with the servers mentioned in the Subpoena. Libling Decl. ¶¶ 10, 12. The restored "user account information" database is separate from the "content" database, which includes messages, posts, and other content from the deleted servers, and which has not yet been restored. Libling Decl. ¶¶ 10-11. Specifically, after restoring the database, Discord identified 32 accounts (including email addresses) that it believed were responsive to Request 7.[2] Libling Decl. ¶¶ 12-13. On or around April 25, 2018, Discord provided notice of the Subpoena to the email addresses associated with those 32 accounts. Libling Decl. ¶ 13, Ex. 17. Discord proposed that, for each of these accounts, Discord would then seek the affirmative consent of those accountholders to disclose to Plaintiffs communications and messages associated with the account. Libling Decl. ¶ 14, Ex. 18. Plaintiffs and Discord are fully aware of the Stored Communications Act ("SCA"), discussed further below, and have been discussing its requirements and how to satisfy them. Libling Decl. ¶¶ 14-15.

//

//

//

---

[2] Plaintiffs believe that additional accounts are responsive to the Subpoena, but those issues remain the subject of meet-and-confers and need not be litigated in this motion.

**LEGAL STANDARD**

A subpoena must be quashed, upon timely motion, if it (1) "fails to allow a reasonable time to comply," (2) "requires a person to comply beyond the geographical limits specified in Rule 45(c)," (3) "requires disclosure of privileged or other protected matter," or (4) "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv). A "court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena. The party who moves to quash a subpoena bears the 'burden of persuasion' under Rule 45(c)(3)." *ATS Prods., Inc v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) (citations omitted).

The Court evaluates a motion to quash a subpoena under Rule 45 in the context of Rule 26, which provides, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994); *Del Campo v. Kennedy*, 236 F.R.D. 454, 457 (N.D. Cal. 2006).

**ARGUMENT**

**I.      Doe Lacks Standing To Move To Quash the Subpoena.**

Doe is a non-party who is not required to comply with the Subpoena, which targets a separate non-party, Discord. "FRCP 45(c) is designed primarily to protect persons from subpoenas that are served upon them." *In re Yassai*, 225 B.R. 478, 481 (Bankr. C.D. Cal. 1998). Accordingly, district courts in the Ninth Circuit have held that a non-party lacks standing to move to quash a subpoena served on a separate non-party. *E.g.*, *id.* at 482; *Proficio Mortg. Ventures, LLC v. Fed. Sav. Bank*, No. 2:15-CV-510-RFB-VCF, 2016 WL 1465333, at *3 (D. Nev. Apr. 14, 2016); *Salem Vegas, L.P. v. Guanci*, No. 2:12-CV-01892-GMN, 2013 WL 5493126, at *3 (D. Nev. Sept. 30, 2013). Similarly, Doe lacks standing to quash the Subpoena

here.

Certain courts have held that, where a *party* moves to quash, the party may have standing if it "claims a personal right or privilege with respect to the documents requested in the subpoena." *Dale Evans Parkway 2012, LLC v. Nat'l Fire & Marine Ins. Co.*, No. EDCV15979JGBSPX, 2016 WL 7486606, at *3 (C.D. Cal. Oct. 27, 2016) (while also noting that a "party lacks standing to quash a subpoena on grounds that it is overbroad or unduly burdensome on a third party"). Even if Doe could claim standing under that principle, she would only have standing to move to quash the Subpoena on behalf of herself and with regard to documents or communications on Discord from, to, or involving her, and for which she could claim "a personal right or privilege." She would not have standing on behalf of any other individuals named in the Subpoena, because she has no "personal right or privilege" in documents or communications that were not sent from or to and do not involve her. *See Drummond Co. v. Collingsworth*, No. 13MC80169JSTJCS, 2013 WL 6074157, at *17 (N.D. Cal. Nov. 18, 2013) (Spero, M.J.) (holding that "the moving parties do not have standing to move to quash the subpoenas as they relate to these three email addresses" because the defendants had no "close relationship with the email account holders").

Doe cites several cases for the proposition that she has standing to move to quash on behalf of others named in the Subpoena, Mot. 5. Those cases are inapposite. For example, *Faith Baptist Church v. Waterford Township* involved standing to claim injury from a township's threat to prosecute church members, not standing to move to quash a subpoena. 522 F. App'x 322, 330 (6th Cir. 2013); *see Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 957 (1984) (discussing "whether standing exists to challenge a statute that allegedly chills free speech"). Jane Doe is not a member of any group targeted by government action, as were the plaintiffs in these cases, but rather is someone who voluntarily disclosed information to Discord, an entity unaffiliated with her cause. More fundamentally, none of these cases speak to standing to move to quash a subpoena under Rule 45.

Nothing about the Stored Communications Act changes this analysis. The SCA addresses the disclosure of "Stored Wire and Electronic Communications and Transactional

Records." 18 U.S.C. § 2701 *et seq.* As relevant here, the SCA describes the circumstances under which entities providing an "electronic communication service" ("ECS") or "remote computing service" ("RCS") may lawfully "divulge . . . the contents of a communication while in electronic storage by that service" or "the contents of any communication which is carried or maintained on that service." 18 U.S.C. § 2702(a)(1)-(2).[3] Among other circumstances, an ECS or RCS provider may permissibly "divulge the contents of a communication . . . with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of [an RCS]." 18 U.S.C. § 2702(b)(3). An ECS or RCS provider may also lawfully "divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications . . . ) . . . to any person other than a governmental entity" without consent. 18 U.S.C. § 2702(c)(6). To the extent that the SCA provides Doe with any rights against the party issuing a subpoena, and nothing in the language of the SCA does so, it would apply only to the contents of her communications slated to be produced and for which no valid consent had been obtained. At this time, there are no such documents slated to be produced, and a valid SCA consent would be procured before any such production. Libling Decl. ¶¶ 10-15.

## II.     Doe Cannot Establish Any Ground for Quashing the Subpoena.

Even if Doe had standing to challenge the Subpoena, the Court should deny Doe's motion because she cannot establish any ground for quashing the Subpoena. A "court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *ATS Prods.*, 309 F.R.D. at 531. Under Rule 26, the court also considers whether the subject of the discovery is "relevant to any party's claim or defense and proportional to the needs of the

---

[3] An ECS is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). An RCS is defined as "the provision to the public of computer storage or processing services by means of an electronic communications system." 18 U.S.C. § 2711(2).

1  case." Fed. R. Civ. P. 26(b)(1); *see Exxon Shipping Co.*, 34 F.3d at 779; *Del Campo*, 236

2  F.R.D. at 457.

3      **A.     The Discovery Sought Is Relevant, Necessary, and Proportional to the**

4          **Needs of the Case.**

5      The discovery sought in this case is highly relevant to Plaintiffs' claims.  As detailed

6  above, the Defendants and coconspirators' communications via Discord are evidence at the

7  heart of the case.  The statements released from Discord have already provided evidence, *inter*

8  *alia*, of Defendants' and coconspirators' intent to do violence and intimidate during the

9  weekend of August 11 and 12, FAC ¶¶ 90, 95-97, 111-12, 116; of the racial and religious

10 animus that underlay their actions in Charlottesville, *id.*; and of their conspiratorial agreement

11 prior to and during the weekend of August 11 and 12, FAC ¶¶ 145, 147, 152, 167, 189-90, 218.

12 The communications by Doe ("kristall.night") that have already been leaked from Discord

13 show that she was also involved in planning the events of that weekend and shared Defendants'

14 goals of violence and intimidation and their motivation of racial animus.  *See* Libling Decl. ¶ 8,

15 Exs. 5-16.

16     The communications sought by the Subpoena, because they go to the heart of Plaintiffs'

17 factual and legal theories, easily clear the threshold for "relevance" under Rules 26 and 45.  *See*

18 Fed. R. Civ. P. 26(b)(1) (material is discoverable where "relevant to any party's claim or

19 defense"); *ATS Prods.*, 309 F.R.D. at 531 ("Relevancy, for the purposes of discovery, is

20 defined broadly, although it is not without ultimate and necessary boundaries.").  Given what

21 has already been revealed from Discord, there can be no question as to "the importance of the

22 discovery in resolving the issues" in the lawsuit.  Fed. R. Civ. P. 26(b)(1).  The discovery is

23 also "proportional to the needs of the case," *id.*, because Plaintiffs have already been able to

24 connect the individuals named in the Subpoena to Unite the Right through the evidence leaked

25 from Discord.   Seeking discovery from Discord itself rather than Defendants is also

26 "proportional"—indeed, necessary—because Discord has deleted the servers that were

27 involved in planning the events in Charlottesville, and so only Discord, not Defendants or

28 coconspirators, has access to those communications.  Libling Decl. ¶¶ 6-7, 9-10, Ex. 4.

In light of the clear relevance of the discovery, Doe's arguments that the Subpoena is "overbroad" and "seeks irrelevant information," Mot. 14, fail. Doe focuses on Request 7, which seeks communications to, from, or concerning various Discord accounts, including Doe's account "kristall.night," from January 1, 2015, to the present. *See* Subpoena Req. 7 & Def. & Instr. 25. At present, the only information Discord is proposing to produce is account information, such as email addresses. Libling Decl. ¶¶ 10-13. Identifying information of participants and witnesses is classic discoverable information. *See Drummond Co.*, 2013 WL 6074157, at *10 (Spero, J.) (explaining that identifying information including mailing address and phone number was "clearly discoverable" (citing Fed. R. Civ. P. 26(b)(1) (discoverable information includes "the identity and location of persons who know of any discoverable matter"))). The SCA does not govern the production of identifying information, because the SCA permits an ECS or RCS provider to "divulge a record or other information pertaining to a subscriber to or customer of such service" to "any person other than a governmental entity." 18 U.S.C. § 2702(c)(6); *see Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F. Supp. 2d 987, 993 (C.D. Cal. 2012) (explaining that requests for, *inter alia*, originating and receiving telephone numbers "seek only subscriber information and not the content of any communications. As Defendants are not a governmental entity, AT & T may disclose this information to them consistent with the SCA" (citation omitted) (citing U.S.C. § 2702(c)(6))).

It is true, however, that Plaintiffs ultimately seek the messages exchanged by Doe and others on Discord because it is those messages that may be the best evidence of how the alleged conspiracy was planned and executed. Production of such information is governed by the SCA, such that the messages' content will only be produced if the sender, or a recipient, consents to such production. Libling Decl. ¶¶ 14-15; 18 U.S.C. § 2702(b)(3). The necessity of consent eliminates any concern of overbreadth—Discord will not produce more than has been consented to, and nothing in the SCA gives Doe the right to object to disclosure of messages she authored when a recipient has consented to their production. *See* 18 U.S.C. § 2702(b)(3); *Super Vitaminas, S. A.*, No. 17-MC-80125-SVK, 2017 WL 5571037, at *4 (N.D. Cal. Nov. 20, 2017) (approving subpoenas seeking employees' emails from third party where employees

consented, and thus "disclosure of the contents of the emails would not violate the SCA").[4] There is, therefore, no basis for Doe's argument that "private communications on every possible subject," including "communications on both personal and private matters with no bearing whatsoever on this case," Mot. 15, will be produced.[5]

In any event, Doe has not met her burden of demonstrating that her personal or private matters are within the scope of the Subpoena's request. She did not, for example, submit an affidavit or otherwise substantiate her claim that she discussed such matter on Discord. *See* Mot. 15-16. Doe's hypothetical concerns are insufficient to meet Doe's "'burden of persuasion' under Rule 45(c)(3)." *ATS Prods.*, 309 F.R.D. at 531.

For the same reason, Doe's assertion that "the scope of the Subpoena thus potentially extends to thousands of unidentified individuals, many of whom likely have no relationship whatsoever with any party to this case or to the facts of the case," Mot. 8-9, is simply wrong. In order to receive "all communications to or from [a] user," Mot. 6, Plaintiffs require the consent of that user (or, theoretically but unrealistically, the consent of a sender or recipient of every message to or from that user). There is simply no basis in fact to believe that Plaintiffs are seeking or would receive the communications of anyone with "no relationship whatsoever

---

[4] Consent may be procured through a subpoena or document request, but that discovery must issue to the author or recipient. *See Flagg v. City of Detroit*, 252 F.R.D. 346, 366 (E.D. Mich. 2008); *Mackelprang v. Fidelity Nat'l Title Agency of Nev., Inc.*, No. 2:06-CV-00788-JCM-GWF, 2007 WL 119149, at *8 (D. Nev. Jan. 9, 2007); *see also Al Noaimi v. Zaid,* No. 11-1156-EFM, 2012 WL 4758048, at *3 (D. Kan. Oct. 5, 2012) (ordering plaintiffs to execute consent under SCA). Neither situation is before the Court because Discord is a service provider.

[5] This case is thus unlike *In re Grand Jury Subpoena, JK-15-029*, *see* Mot. 14, where the subpoena included the Oregon governor's personal emails that could not have been relevant to the federal government's investigation into the governor's conduct of official business, and the "subpoena does not exclude these communications or otherwise limit the documents demanded to those within the scope of the government's legitimate concern in conducting a thorough investigation of [the governor's] conduct of official business." 828 F.3d 1083, 1088 (9th Cir. 2016). This case is also unlike *Theofel v. Farey-Jones*, *see* Mot. 16, where the Subpoena requested the entirety of a company's email, without being limited to the "subject matter of the litigation," the "relevant time period," or "employees in some way connected to the litigation." 359 F.3d 1066, 1071 (9th Cir. 2004). Here, Plaintiffs request documents and communications only since 2015; only for individuals and entities Plaintiffs have already been able to connect to the Unite the Right events in Charlottesville on August 11 and 12; and directed toward the platform specifically used to plan Unite the Right.

---

with any party to this case or to the facts of the case."

**B. The Potential Hardship to Doe Is Insubstantial.**

In her Motion to Quash, Doe focuses on two prongs of Rule 45(c)(3)(A): that the Subpoena would "require[] disclosure of privileged or other protected matter," Fed. R. Civ. P. 45(c)(3)(A)(iii), specifically matter protected by the First Amendment, and that the Subpoena would impose an "undue burden," Fed. R. Civ. P. 45(c)(3)(A)(iv), on her First Amendment rights of anonymous speech and association. Mot. 4. Her arguments fail, not least because the Protective Order in this case ensures that Doe's personally identifying information and other private content—even assuming it existed on Discord—will remain confidential.

**1. Discord's Compliance with the Subpoena Would Not Infringe on Doe's First Amendment Right to Anonymous Speech.**

Doe first argues that Discord's compliance with the Subpoena would infringe on Doe's "First Amendment right to anonymous speech." Mot. 6. Doe's speculative and hypothetical concerns provide no reason to quash the Subpoena.

Most of the Subpoena has nothing to do with anonymous speech. For example, several requests seek communications concerning the events in Charlottesville on August 11 and 12 and precursor events involving many of the same individuals. *See* Subpoena Reqs. 2-5. The Subpoena also seeks communications made on servers and channels that were used to plan the events that weekend. *Id.* at Req. 6. Many of the individuals and entities for whom the Subpoena seeks communications are identified by name in the Subpoena. *Id.* at Reqs. 7, 8. Compliance with these requests would not identify Doe or any other anonymous Discord users.

It is true that the Subpoena also seeks user information and communications to, from, and concerning certain Discord accounts that are not identified by name, including Doe's alias "kristall.night." *Id.* at Req. 7. However, Doe's concern about a parade of horribles resulting from Discord's compliance with the Subpoena—including that Plaintiffs will "dox" them and "out[] them as members of the 'Alt-Right,'" Mot. 2—is unpersuasive. The Protective Order permits material to be designated Confidential or Highly Confidential, which, as explained above, significantly restricts the people to whom the information can be disclosed. Libling

Decl. ¶ 5, Ex. 3 at ¶¶ 4-5.   Indeed, not even the Plaintiffs themselves can see Highly Confidential material.  *Id.* ¶¶ 3-5.  Doe's concern that she and others "will be outed," resulting in "serious harm to their personal and professional lives," Mot. 6-7, therefore fails to meet her "'burden of persuasion' under Rule 45(c)(3)." *ATS Prods.*, 309 F.R.D. at 531.  Certainly, Doe has made no showing as to the likelihood of any harm to her or others, nor any reason why the Court should grant her stronger protections than the Protective Order already provides.

Doe relies on *In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011), *see* Mot. 6, 8-9, but that case actually supports the enforcement of the Subpoena here.  The plaintiff there alleged that the defendant had engaged in an internet smear campaign, and the district court allowed the plaintiff to seek testimony regarding the identity of anonymous speakers who had allegedly made defamatory comments.  661 F.3d at 1171.  The Ninth Circuit first noted that the right to anonymous speech is "not unlimited." *Id.* at 1173.  The court then held that the district court committed no clear error, and observed that, as here, the "parties have a protective order in place that provides different levels of disclosure for different categories of documents to various recipients," and that a "protective order is just one of the tools available to the district court to oversee discovery of sensitive matters that implicate First Amendment rights." *Id.* at 1176-78; *see A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006) (granting motion to compel and finding that "plaintiff's need for [defendant's] financial documents outweighs [defendant's] claim of privacy, especially when the 'impact' of the disclosure of the information can be protected by a 'carefully drafted' protective order"); *In re Heritage Bond Litig.*, No. CV 02-1475-DT(RCX), 2004 WL 1970058, at *5 n.12 (C.D. Cal. July 23, 2004) (granting motion to compel and finding that "[a]ny privacy concerns . . . defendants have in their bank records and related financial statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter").

Doe urges the Court to use the balancing test articulated in *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001).  Contrary to Doe's suggestion, the Ninth Circuit has

not adopted that test.[6] Even if it applied here, its factors indicate that the Motion should be denied. The Discord Subpoena "was issued in good faith and not for any improper purpose," *id.* at 1095, given that the limited materials already released from Discord provide evidence of a conspiracy in Charlottesville to do violence and intimidate motivated by racial and religious animus. *See, e.g.*, FAC ¶¶ 90, 95-97, 102-120. The "information sought relates to a core claim or defense," and "the identifying information is directly and materially relevant to that claim or defense," *2TheMart.com*, 140 F. Supp. 2d at 1095, because statements evidencing a conspiracy to do violence and intimidate are "relevant" to and at the "core" of the Virginia Action. *See* FAC ¶¶ 90, 95-97, 102-120. And "information sufficient to establish or to disprove that claim or defense is unavailable from any other source," *2TheMart.com*, 140 F. Supp. 2d at 1095, because only Discord, not the Defendants or coconspirators, has the full record of Defendants' and their coconspirators' communications. Libling Decl. ¶¶ 6-7, 9-10.[7]

//

//

//

----

[6] Doe appears to cite *Anonymous Online Speakers* for the proposition that "[t]his Court has approved of the *2theMart.com* test." Mot. 9. However, as the Ninth Circuit explained, the *2TheMart.com* test is just one of many that district courts have used to determine whether an anonymous speaker's identity should be revealed through the discovery process. 661 F.3d at 1175; *see, e.g.*, *Doe I v. Individuals*, 561 F. Supp. 2d 249, 257 (D. Conn. 2008) (denying motion to quash after plaintiff provided evidence supporting "prima facie case for libel" against anonymous defendant); *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-81 (N.D. Cal. 1999) (allowing discovery after plaintiff made "good faith effort to specifically identify defendant and to serve notice on defendant" and "demonstrated that their trademark infringement claim could survive a motion to dismiss"). Neither the district court nor the Ninth Circuit actually used the *2TheMart.com* test in *Anonymous Online Speakers*. 661 F.3d at 1176.

[7] Other cases cited by Doe are also inapposite. For example, she cites *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999), for the proposition that "[a]nonymous online speakers are entitled to a limited privilege under the First Amendment, which a court must consider before allowing discovery." Mot. 8. That case related to whether Colorado's statutory requirements for circulating ballot-initiative petitions violated the First Amendment, not to discovery of anonymous speakers' identities through Rule 45. 525 U.S. at 186-87.

----

1    **2.    Discord's Compliance with the Subpoena Would Not Infringe on**

2    **Doe's First Amendment Right to Association.**

3    Doe's second main argument is that Discord's compliance with the Subpoena will

4    infringe on her "First Amendment right to associate and express political views as a group."

5    Mot. 11.  That fear, too, is unfounded.

6    In evaluating claims of First Amendment rights to association, the Ninth Circuit applies

7    the analysis articulated in *Brock v. Local 375, Plumbers International Union of America, AFL-*

8    *CIO*, 860 F.2d 346 (9th Cir. 1988).   In *Brock*, the Ninth Circuit asked first whether the

9    subpoenaed entity was "an association entitled to first amendment rights."   860 F.2d at 349.

10   Finding that it was, the court held that the entity would need on remand to make a "prima facie

11   showing of arguable first amendment infringement" by demonstrating that "enforcement of the

12   subpoenas will result in (1) harassment, membership withdrawal, or discouragement of new

13   members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of,

14   the members' associational rights."   *Id.* at 350.  Assuming that the entity could make such a

15   showing on remand, then the evidentiary burden would shift to the government seeking

16   discovery to "demonstrate that the information sought through the subpoenas is rationally

17   related to a compelling governmental interest."  *Id.*

18   Doe's attempt to apply the *Brock* framework in her favor falls apart at the first step: she

19   cannot make the "prima facie showing of arguable first amendment infringement" as to her

20   associational rights.  *Id.*  Doe reiterates her fears that "personally identifying information" will

21   be revealed and that she will be "subjected to harassment, physical violence, loss of

22   employment, and destruction of personal relationships if their affiliation with the 'Alt-Right' is

23   made public."  Mot. 12-13.  However, as explained above, the Protective Order provides

24   adequate protection, Libling Decl. ¶ 5, Ex. 3, and Doe has provided no evidence whatever to

25   suggest that Plaintiffs will engage in any untoward conduct.  Such "[b]are allegations of

26   possible first amendment violations are insufficient to justify judicial intervention . . . .  The

27   record must contain 'objective and articulable facts, which go beyond broad allegations or

28   subjective fears.'"  *McLaughlin v. Serv. Emps. Union, AFL-CIO, Local 280*, 880 F.2d 170, 175

1    (9th Cir. 1989) (quoting *Brock*, 860 F.2d at 350 n.1) (district court abused discretion in issuing

2    a protective order "in the absence of any facts demonstrating actual or threatened disclosure").

3            Even if Doe could make a *prima facie* showing of First Amendment infringement,

4    Plaintiffs would meet their burden to demonstrate that the discovery sought was "rationally

5    related" to a compelling interest. *Brock*, 860 F.2d at 349. As explained above, the discovery

6    sought through the Subpoena is "highly relevant," *Perry v. Schwarzenegger*, 591 F.3d 1126,

7    1141 (9th Cir. 2009), to proving Plaintiffs' allegations. This case is not like *NAACP v.*

8    *Patterson*: the Subpoena does not broadly request membership lists of the "Alt-Right" or

9    another organization, 357 U.S. 449, 451 (1958), but rather seeks communications of individuals

10   who Plaintiffs have already been able to connect to the conspiracy in Charlottesville through

11   the public release of select Discord materials. Subpoena Req. 7; Libling Decl. ¶¶ 6, 8.

12           Furthermore, the Subpoena is "the 'least restrictive means' of obtaining the desired

13   information," *Brock*, 860 F.2d at 349, which is "otherwise unavailable," *Perry*, 591 F.3d at

14   1141. Doe argues that the information "can be obtained through conventional discovery on

15   Defendants, rather than non-parties," Mot. 14, but that is wrong: only Discord, not Defendants

16   or their coconspirators, has access to backup tapes containing the relevant documents and

17   communications. Libling Decl. ¶¶ 6-7, 9-10. The Subpoena is thus narrowly tailored and the

18   "least restrictive means" of obtaining the relevant information. *See Brock*, 860 F.2d at 349.

19                                      **CONCLUSION**

20           For the foregoing reasons, Plaintiffs respectfully request that the Court deny Doe's

21   Motion to Quash.

22

23                    *                    *                    *

24

25

26

27

28

Dated:  June 6, 2018

Respectfully submitted,

BOIES SCHILLER FLEXNER LLP

By: */s/ Sean P Rodriguez*
Sean Phillips Rodriguez (SBN 262437)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Phone: (510) 874-1000
Facsimile: (510) 874-1460
srodriguez@bsfllp.com

Joshua J. Libling (*pro hac vice* to be filed)
BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Fax: (212) 446-2350
jlibling@bsfllp.com

*Additional Counsel for Plaintiffs in the underlying matter (not appearing before this Court in this subpoena dispute)*:

Karen L. Dunn
William A. Isaacson
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
kdunn@bsfllp.com
wisaacson@bsfllp.com

Roberta A. Kaplan
Julie E. Fink
Gabrielle E. Tenzer
Christopher B. Greene
Seguin L. Strohmeier
KAPLAN & COMPANY, LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
Telephone: (212) 763-0883
rkaplan@kaplanandcompany.com
jfink@kaplanandcompany.com
gtenzer@kaplanandcompany.com
cgreene@kaplanandcompany.com
sstrohmeier@kaplanandcompany.com

Philip M. Bowman
Yotam Barkai
BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Fax: (212) 446-2350
pbowman@bsfllp.com
ybarkai@bsfllp.com

Alan Levine
COOLEY LLP
1114 Avenue of the Americas, 46th Floor
New York, NY 10036
Telephone: (212) 479-6260
Fax: (212) 479-6275
alevine@cooley.com

David E. Mills
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com

Robert T. Cahill
COOLEY LLP
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Fax: (703) 456-8100
rcahill@cooley.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 6, 2018, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a notice of electronic filing to counsel for Jane Doe:

Marc J. Randazza
Alex J. Shepard
Randazza Legal Group, PLLC
274 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
mjr@randazza.com
ajs@randazza.com

*Counsel for Movant Jane Doe*

I further hereby certify that, on June 6, 2018, I served the following participants in the underlying matter via email:

Justin Saunders Gravatt
David L. Hauck
David L. Campbell
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
jgravatt@dhdglaw.com
dhauck@dhdglaw.com
dcampbell@dhdglaw.com

*Counsel for Defendant James A. Fields, Jr.*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Defendants Michael Hill, Michael Tubbs, and League of the South*

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
jek318@gmail.com

*Counsel for Defendants Jeff Schoep, Nationalist Front, National Socialist Movement, Matthew Parrott, Matthew Heimbach, Robert Ray, Traditionalist Worker Party, Elliot Kline, Jason Kessler, Vanguard America, Nathan Damigo, Identity Europa, Inc. (Identity Evropa), and Christopher Cantwell*

John A. DiNucci
Law Office of John A. DiNucci
8180 Greensboro, Drive, Suite 1150
McLean, VA 22101
dinuccilaw@outlook.com

*Counsel for Defendant Richard Spencer*

Michael Peinovich a/k/a Michael "Enoch" Peinovich
PO Box 1069
Hopewell Junction, NY 12533
mpeinovich@gmail.com

*Pro Se Defendant*

I further hereby certify that, on June 6, 2018, I caused the following participants in the underlying material to be served via U.S. mail, First Class and postage prepaid, addressed as follows:

Loyal White Knights of the Ku Klux Klan
a/k/a Loyal White Knights Church of
the Invisible Empire, Inc.
c/o Chris and Amanda Barker
P.O. Box 54
Pelham, NC 27311

Andrew Anglin
P.O. Box 208
Worthington, OH 43085

Moonbase Holdings, LLC
c/o Andrew Anglin
P.O. Box 208
Worthington, OH 43085

Fraternal Order of the Alt-Knights
c/o Kyle Chapman
52 Lycett Circle
Daly City, CA 94015

East Coast Knights of the Ku Klux Klan
a/k/a East Coast Knights of the
True Invisible Empire
26 South Pine St.
Red Lion, PA 17356

Augustus Sol Invictus
9823 4th Avenue
Orlando, FL 32824

*/s/ Sean P. Rodriguez*
Sean P. Rodriguez (SBN 262437)
BOIES SCHILLER FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Phone: (510) 874-1000
Facsimile: (510) 874-1460
srodriguez@bsfllp.com

*Attorney for Plaintiffs*