Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: 702-420-2001
Fax: 305-437-7662
ecf@randazza.com

*Attorneys for Jane Doe*

# IN THE UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *IN RE: Motion of Non-Party JANE DOE,*<br><br>ELIZABETH SINES, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>JASON KESSLER, et al.,<br><br>Defendants. | Case No. 3:18-mc-80080-JCS<br><br>*(pending in the United States District Court for the Western District of Virginia, Case No. 3:17-cv-72)*<br><br>**REPLY IN SUPPORT OF JANE DOE'S MOTION TO QUASH SUBPOENA FOR DOCUMENTS TO DISCORD, INC.;**<br><br>JUDGE: Spero, C.M.J.<br>CTRM: G |

## 1.0 INTRODUCTION AND STATEMENT OF FACTS

Jane Doe used the online Discord platform to exercise her constitutional rights of anonymous speech and association, and to express unpopular political views. In the above-captioned civil action (the "Underlying Suit"), Plaintiffs have not brought any claims against her. However, these Plaintiffs have decided that it is their moral crusade to find everyone who espouses these views, and to expose their names and personally identifying information to the public. This is an abuse of process, and should not be granted the court's imprimatur.

Plaintiffs' subpoena to Discord (the "Subpoena) seeks both identifying information of and the contents of communications to or from Doe, as well as several other unnamed Discord users. (*See* Doc. No. 1-1 at Request No. 7.) None of these anonymous Discord users are defendants in the Underlying Suit, either. If Jane Doe's identity is revealed, she is likely to suffer significant harm physically, reputationally, and professionally. (*See* Doc. Nos. 1-4 to 1-10; *see also* Declaration of Jane Doe ["Doe Decl."], attached as **Exhibit 1**, at ¶¶ 6-8.) In fact, if history is any guide, this is Plaintiffs' intention.

## 2.0 ARGUMENT

### 2.1 Jane Doe Has Standing

Plaintiffs argue that Jane Doe lacks standing to quash the Subpoena, claiming that Fed. R. Civ. P. 45(d)(iii)(A) only allows a motion to quash from the person whose compliance is required by the subpoena or a party who is affected by it. The cases it cites do not support this proposition, however. *Proficio Mortg. Ventures, LLC v. Fed. Sav. Bank*, 2016 U.S. Dist. LEXIS 50355 (D. Nev. Apr. 14, 2016) dealt with *parties* filing motions to quash subpoenas to non-parties. The court denied their motions to quash due to a failure to demonstrate a personal right or privilege in responsive documents; it did not address the issue of whether a non-party has standing to challenge a subpoena issued to a non-party. *See id.* at *6-9. At most, the *Proficio* court stated that "[i]f a party lacks standing to challenge a subpoena issued to a non-party, then a non-party may not challenge subpoenas issued to other non-parties," *id*. at *8, citing *G.K. Las Vegas Ltd. Partnership*, 2007 U.S. Dist. LEXIS 97869 (D. Nev. Jan. 9, 2007), which in turn did not deal with a non-party moving to quash a subpoena to a non-party. It stands for the proposition that a non-party must demonstrate a personal right or privilege in responsive documents to challenge a subpoena to a non-party, not that non-parties categorically lack standing to do so.

The question of whether Jane Doe has a personal right or privilege in the information requested from Discord sufficient to confer standing has already been answered. *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 974 (C.D. Cal. 2010) dealt with a subpoena to a non-party requesting information protected by the SCA relating to the plaintiff. The court found that "an individual has a personal right in information in his or her profile and inbox on a social networking site and his or her webmail inbox in the same way that an individual has a personal right in employment and bank records," sufficient to confer standing to challenge the subpoena. *Id*. The Subpoena at issue here requests all communications on the entire Discord platform to, from, or even *about* Jane Doe and dozens of other anonymous Discord users, regardless of whether they have any relation to the subject matter of the Underlying Suit. The Subpoena thus requests information that is comparable to the information requested in *Crispin*. Jane Doe has a personal right in this information, and thus has standing to challenge the Subpoena.

Plaintiffs also claim non-parties categorically lack standing to challenge subpoenas to non-parties by citing *Salem Vegas, L.P. v. Guanci*, 2013 U.S. Dist. LEXIS 141619 (D. Nev. Sept. 30, 2013). This, however, is a non-binding decision from a different district that made no mention of the SCA. A more relevant case from this very Court is *Can't Live Without It, LLC v. ETS Express Inc.*, 2017 U.S. Dist. LEXIS 202010, *2 (N.D. Cal. Dec. 17, 2017). There, this Court granted a non-party's motion to quash by a subpoena issued to non-party Google to produce emails from the non-party's personal email address, finding that the subpoena violated the SCA. This Court in *Chevron Corp. v. Donziger*, 2013 U.S. Dist. LEXIS 119622, *16 (N.D. Cal. Aug. 22, 2013) also found that unidentified non-party John Does had standing to move to quash a subpoena to a non-party requesting documents related to email addresses owned by the Does.

But even if Jane Doe lacks standing under Fed. R. Civ. P. 45, Plaintiffs completely ignore Cal. Code Civ. Proc. § 1987.1, which explicitly allows "[a] person whose personally identifying information … is sought in connection with an underlying action involving that person's exercise of free speech rights" to bring a motion to quash.[1]  Plaintiffs do not, and cannot, argue that the Underlying Suit does not involve Jane Doe's (and other anonymous Discord users') exercise of First Amendment rights.  Accordingly, Jane Doe has standing under Cal. Code Civ. Proc. § 1987.1 to move to quash the Subpoena.  As Plaintiffs do not argue to the contrary, the Court should interpret Plaintiffs' silence as a concession that Jane Doe has standing under this statute.

Finally, even if the Court finds that Jane Doe does not have standing to move to quash the Subpoena, the Court may quash an improperly issued subpoena *sua sponte*.  *See Rodrigues v. Ryan*, 2018 U.S. Dist. LEXIS 33260, *5-6 (D. Ariz. Feb. 28, 2018); *see also Elite Lightning v. DMF, Inc.*, 2013 U.S. Dist. LEXIS 201677 (C.D. Cal. May 6, 2013).

### 2.2 The Subpoena is Overbroad

Plaintiffs make the curious argument that, although the Subpoena is horrifically overbroad, there is no reason to quash it because Discord has so far only agreed to produce a subset of the requested information.  (*See* Doc. No. 8 at 19.)  Plaintiffs claim there is no problem of overbreadth because Discord will not disclose the contents of any communication without the consent of the

---

[1] While nominally procedural, the articulated protections for anonymous speakers in Cal. Code Civ. Proc. § 1987.1 are substantive and are based upon the same free speech concerns that animate California's Anti-SLAPP statute.  *See, e.g., United States ex rel. Newsham v. Lockheed Missiles and Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (holding that California's Anti-SLAPP statute is substantive in design and intent and thus applies in federal court).  Section 1987.1's protections thus apply to any non-federal claims based on the exercise of First Amendment rights, which is precisely what Plaintiffs' claims are.

sender or recipient. But this makes no sense. No one has given consent to Discord to disclose any communications. And even if this had happened, it would not change the impermissibly broad scope of Request No. 7: regardless of what agreement Discord comes to with Plaintiffs, the request still has no limitation on relevant subject matter and requires disclosure of all communications to, from, or about Jane Doe or other Discord users, regardless of whether they have anything to do with the allegations in the Underlying Suit. In fact, Discord has noted to Plaintiffs' counsel that it will likely be impractical to locate and disclose only relevant communications stored by Discord. (*See* Doc. Nos. 9-17 & 9-18.)

Jane Doe used the Discord platform for communication with many different people on many different subjects. (*See* Doe Decl. at ¶ 5.) Communications on Discord to, from, and about her were not limited to messages on Discord channels and servers at issue in the Underlying Suit. (*See id*.) Many such communications had nothing whatsoever to do with any claim in the Underlying Suit and involved Discord users who had no involvement with the subject matter of the Underlying Suit. (*See id*.) Furthermore, the Subpoena seeks communications not just to or from Jane Doe, but that are **about** Jane Doe, and she may not be privy to their contents. It is unreasonable to require Jane Doe to show that communications she has never seen contain information that is not relevant to Plaintiffs' claims.

In attempting to distinguish cases cited in the Motion to Quash, Plaintiffs misleadingly claim that "Plaintiffs request documents and communications . . . only for individuals and entities that Plaintiffs have already been able to connect to the Unite the Right events …." (Doc. No. 8 at 20.) But this is not true. Document Request No. 7 in the Subpoena seeks "[a]ll documents and communications to, from, **or concerning**" specified Discord users. (Doc. No. 1-1 at Request No. 7) (emphasis added.) The subpoena thus requests contents of communications

from every single Discord user that mentions one of dozens of people. It is not limited to communications on any given Discord server or channel. By its plain terms, the Subpoena requires to Discord to produce every message on its platform that mentions, for example, James Alex Fields, Jr., the alleged murderer of Heather Heyer. This is a person who received nationwide attention following the Unite the Right rally, and there are undoubtedly thousands, if not millions, of Discord messages by thousands of Discord users that at least mention him. Plaintiffs make no attempt to explain (nor could they explain) how such a grossly overbroad discovery request could possibly be proportionate to the needs of the Underlying Suit.

Plaintiffs claim that the Subpoena seeks relevant information because it will uncover documents evidencing "Defendants' and coconspirators' intent to do violence and intimidate; … of the racial and religious animus that underlay their actions in Charlottesville; … and of their conspiratorial agreement prior to and during the weekend of August 11 and 12." (Doc. No. 8 at 18.) Because this discovery encroaches on the First Amendment rights of Jane Doe and other Discord users, Plaintiffs must show that the "information sought is *highly relevant* to the claims or defenses in the litigation – a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry v. Schwarzenegger*, 591 F.3d 1126, 1141 (9th Cir. 2010) (emphasis added).

Predominantly, Plaintiffs merely allege that the planning of a violent conspiracy took place on specific Discord channels and servers, and that Defendants and unidentified "co-conspirators" took part in planning violence at the Unite the Right rally. They also, however, provide some communications from Jane Doe, using the handle Kristall_Night, published on Discord (*see* Doc. Nos. 9-5 to 9-16), but these documents fall far short of showing the requested information is "highly relevant." They do not show that she was part of any "conspiracy" to

do anything other than attend the rally; the documents that allegedly show she helped "plan" the rally consist of nothing more than generic advice to others interested in attending it.[2] Any reference to "fighting" or "violent" rallies, when viewed in context, is merely a recognition by Jane Doe and other Discord users that their political views are unpopular, and that they expected counter-protesters to be violent.[3] And as for any statements evidencing "racial and religious animus" (Doc. Nos. 8 at 18; *see* Doc. Nos. 9-5 to 9-7), there is nothing at all to indicate that Jane Doe's statements in the Discord channel can be attributed to anyone other than her, or that she is speaking for anyone other than herself. Plaintiffs cannot violate Jane Doe's constitutional rights simply because she holds personal viewpoints of which they disapprove. Some of the requested information may indeed be relevant to Plaintiffs' claims against a *Defendant*, but

---

[2] Advising that people "[g]et there before dark" (Doc. No. 9-10) does not show any degree of involvement or planning than any other rally-goer. Advising that people "[p]urchase self-defense insurance" (Doc. No. 10-15) similarly shows no degree of involvement in planning the rally; in fact, the context of that discussion makes it clear that Jane Doe is simply suggesting people do so because the participants in the conversation expected counter-protesters to be violent, which would necessitate rally-goers defending themselves. And the statement "VA shield wall should be at the ready in case these people get pushed in your direction" (Doc. No. 10-16) again provides no indication that Jane Doe was actually directing people to do anything, as opposed to simply providing general thoughts and advice.

[3] Jane Doe advised that people bring, *inter alia*, shields, helmets, a camera, and knowledge of local laws (Doc. No. 9-11.) She made these statements in the context of a thread about how members of the Unite the Right rally should protect themselves from expected violence by counter-protestors. It is absurd to claim that encouraging protesters to defend themselves and fight back with non-lethal weapons indicates an "intent to perpetrate violence and intimidation." (Doc. No. 8 at 7). As for any reference to using flagpoles as "spears" or "clubs" (Doc. Nos. 9-12 to 9-13), the Opposition conveniently leaves out that these statements are immediately followed by "lol," meaning "laughing out loud," meaning the statement is not serious. The ridiculous nitpicking necessary to divine anything meaningful from these messages is further proof that the Subpoena is attempting to infringe on Jane Doe's constitutional rights.

Jane Doe and the unnamed Discord users are not Defendants, and Plaintiffs provide no suggestion as to how documents requests concerning Jane Doe and unnamed Discord users are relevant to Defendants.

Due to is overbreadth, the Subpoena imposes an undue burden. *See, e.g., Hone v. Presidente U.S.A., Inc.*, 2008 U.S. Dist. LEXIS 55722, *6 (N.D. Cal. 2008) (finding that subpoena requesting all personal emails and instant messages of plaintiff for six-year period was an "all too familiar fishing expedition which the court does not countenance"). *Hone* cited with approval *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008), which found a subpoena seeking all of a third-party's emails for a *six-week* period, without regard for whether they concerned relevant subject matter, was overbroad.

While Discord should be commended for offering only a small subset of the requested documents, its insistence on protecting the rights of its users does not limit the scope of the Subpoena. Plaintiffs may decide to withdraw their Subpoena and issue a sufficiently narrowed one, but in its current form the Subpoena imposes an undue burden and must be quashed.

### 2.3 The Subpoena Violates Jane Doe's Constitutional Rights to Anonymous Speech and Association

Plaintiffs do not contest that there is a significant First Amendment right to anonymous speech implicated by the Subpoena. *See, e.g., Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997) (stating that "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation … [or] concern about social ostracism'"). Rather, they argue that because there is a protective order in place in the Underlying Suit, there is no danger of infringing on this right. But this is not true.

The Ninth Circuit has recognized that, while the existence of a protective order may ameliorate the constitutional harms caused by disclosure of a speaker's identity, it does not remove those harms. The court in *Perry* recognized that "[a] protective order limiting the dissemination of disclosed associational information may mitigate the chilling effect and could weigh against a showing of infringement. **The mere assurance that private information will be narrowly rather than broadly disseminated, however, is not dispositive**." *Perry*, 591 F.3d at 1160 n.6 (emphasis added). Similarly, the court in *Dole v. Service Employees Union, etc., Local 280*, 950 F.2d 1456, 1461 (9th Cir. 1991) recognized that constitutional harms can arise from *any* disclosure of a speaker's identity, not merely *unlimited* disclosure. This case dealt with a labor union being asked to disclose meeting minutes. The court noted that "a belief that the Department will have access to the Union minutes might well cause some Union members to cease speaking freely at meetings, or to cease attending them at all." *Id*. Indeed, it is common sense that:

> If a person knows that her communications will be disclosed to an unintended audience in the future, she may be more cautious in her statements or refrain from speaking entirely. In the same way, a person who belongs to a group that Is required to disclose its internal communications in civil litigation may decide that the invasiveness of the disclosure outweighs the benefit of belonging to or participating in the group.

*Pulte Home Corp. v. Montgomery Cnty. Md.*, 2017 U.S. Dist. LEXIS 43153, *21 (D. Md. Mar. 24, 2017).

There is a similar likelihood here that disclosure of the contents of the communications, and the identities, of numerous Discord users who elected to speak and associate anonymously, will have a chilling effect. The constitutional harm caused by disclosure does not disappear simply because a protective order lessens the likelihood that the worst possible outcome of disclosure will occur.

Furthermore, the information requested by the Subpoena does not relate to a "core claim or defense." *Doe v. 2theMart.com Inc.*, 240 F. Supp. 2d 1088 (W.D. Wash. 2001).[4] As explained above, the Subpoena is grossly overbroad, and Plaintiffs have provided no explanation for how communications to, from, and even *about* Jane Doe and dozens of anonymous Discord users who are not defendants and are not intended to be defendants in the Underlying Suit, are central to any claim or defense in that suit. If the general subject matter of the Subpoena is relevant, it is only relevant insofar as it relates to Defendants specifically, and not to other Discord users.

Furthermore, despite the existence of a protective order in the Underlying Suit, there is a notable possibility of Jane Doe's identity and communications being widely disseminated by Plaintiffs' counsel. Lead counsel in the Underlying Suit, Roberta Ann Kaplan, has made multiple public statements indicating that she has a personal vendetta against anyone involved with the "alt-right," and that Plaintiffs and their counsel are attempting to use the Underlying Suit to intimidate members of the "alt-right" and force them into hiding. The surest way to do this is to use the discovery process to obtain the identities of "alt-right" members and then widely disseminate them.

Following Kaplan's interview with a *New York Times* Reporter, the reporter came away with the impression that "[d]iscovery in [this] case may also expose the links between the far-right groups and their often opaque sources of financing." (Alan Feuer, "Planners of Deadly Charlottesville Rally Are Tested in

---

[4] While Plaintiffs note that the Ninth Circuit has not fully adopted the *2theMart* test in balancing discovery rights against anonymous speakers' First Amendment rights, they do not suggest an alternative test.

Court," THE NEW YORK TIMES (Feb. 12, 2018), attached as **Exhibit 2**.)[5] In a *Daily Kos* article, to which Kaplan's February 14 tweet referred, stated that "[i]f Roberta Kaplan's lawsuit succeeds … the alt-right's funding streams and structures will be exposed." (Rebecca Pilar Buckwalter Poza, "The Charlottesville lawsuit that could take down the alt-right," DAILY KOS (Feb. 13, 2018), attached as **Exhibit 3**.)[6] The purpose of the Underlying Suit is to dismantle the "alt-right." In an article on the web site <vox.com>, Kaplan described her reasoning for representing Plaintiffs in the Underlying Suit, which the author described as "**deeply personal**." (*See* Jane Coaston, "The alt-right is going on trial in Charlottesville," VOX (Mar. 8, 2018), attached as **Exhibit 4**.)[7]

Plaintiffs' grossly overbroad Subpoena, combined with public statements showing this ulterior motive, makes it apparent that the First Amendment rights of Jane Doe and other anonymous Discord users would be at serious risk if the Subpoena is not quashed. Of course, that is Plaintiffs' intent. The intent is to use litigation to stamp out a political philosophy that Plaintiffs and their Counsel both have decided is not worthy of protection. This is the intellectual heir to those who sought to stamp out discussions of socialism during the Red Scare. This is both unconstitutional and unethical.

### 2.4 The Subpoena Violates the Stored Communications Act

The SCA prohibits an electronic communication service provider from "divulge[ing] to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). There is no dispute

---

[5] Available at: https://www.nytimes.com/2018/02/12/us/charlottesville-lawsuit-far-right-heather-heyer.html (last accessed June 27, 2018).
[6] Available at: https://www.dailykos.com/stories/2018/2/13/1740995/-The-Charlottesville-lawsuit-that-could-take-down-the-alt-right (last accessed June 27, 2018).
[7] Available at: https://www.vox.com/2018/3/8/17071832/alt-right-racists-charlottesville (last accessed June 27, 2018).

that Discord provides an electronic communication service, and that the Subpoena requests communications in electronic storage by Discord. The SCA "does not contain an exception for civil discovery subpoenas." *Mintz v. Mark Bartelstein & Assocs.*, 885 F. Supp. 2d 987, 991 (C.D. Cal. 2012). Discord may only disclose the contents of messages if (1) the requesting party is an addressee or a recipient of the message, or (2) the "originator or an addressee or intended recipient of such communication" gives Discord "lawful consent" to disclose it. 18 U.S.C. §§ 2702(b)(1), 2702(b)(2). The SCA does, however, allow providers to disclose subscriber information, other than the contents of communications, to a non-governmental entity without consent. *See* 18 U.S.C. § 2702(c)(6).

Request No. 7 of the Subpoena seeks both subscriber information and the contents of communications stored by Discord. Plaintiffs do not allege to be addressees or intended recipients of any message requested by the Subpoena. Furthermore, Plaintiffs do not allege to have obtained the consent of an originator, addressee, or intended recipient of any requested message. Thus, by the plain terms of the SCA, Discord cannot fully comply with the Subpoena.

This is sufficient grounds for the Court to quash the Subpoena. For example, the court in *Mintz* quashed portions of a subpoena to AT&T requesting contents of the plaintiff's online communications, finding that the SCA prevented disclosure of such information. Specifically, it pointed out that, rather than wait for AT&T to send consent requests to the plaintiff for disclosure of communication contents, the proper procedural course was to serve a discovery request on the plaintiff, who would then have an opportunity to oppose the subpoena. *See id*. at 994. "Because no exception applies, compliance with the subpoena would be 'an invasion … of the specific interests that the [SCA] seeks to protect.'" *Janice Chasten v. Franklin*, 2010 U.S. Dist. LEXIS 113284, *5 (N.D. Cal. Oct. 14, 2010) (quoting *Theofel v. Farey-Jones*, 359 F.3d 1066, 1074 (9th Cir. 2004)).

- 12 -
Reply in Support of Motion to Quash
3:18-mc-80080-JCS

Plaintiffs explicitly state that, despite the SCA's protections, they are seeking the contents of communications stored by Discord. This is why it is important to follow the proper procedural sequence, especially if the Court concludes that Jane Doe does not have standing to challenge it. In circumstances such as these, where the author of an online communication is anonymous and is not in possession of the requested documents, the following is supposed to happen:

1. The plaintiff serves a subpoena for subscriber information on the relevant service provider;
2. The service provider discloses subscriber information, allowing the plaintiff to determine the identity of a speaker;
3. The plaintiff serves a subpoena on the now-identified speaker;
4. If the speaker (1) opposes the subpoena and the court compels compliance or (2) agrees to comply with the subpoena, the speaker provides consent to the service provider for disclosure of communication contents.
5. The service provider discloses the requested communication contents to the plaintiff.

*See Mink*, 885 F. Supp. at 994 (finding SCA did not allow AT&T to comply with subpoena requesting plaintiff communications, but noting that plaintiff could request copies of messages from AT&T as "originator" of communications and that defendant could request communications under Fed. R. Civ. P. 34);[8] *see also Juror Number One v. Superior Court*, 206 Cal. App. 4th 854, 865 (2012) (finding that relevant question was not whether court could subpoena service provider to disclose contents of communications, but whether it could compel author of

---

[8] Like with Rule 34, Fed. R. Civ. P. 16 is concerned with electronically stored information and documents in the responding party's "possession, custody, or control."

- 13 -
Reply in Support of Motion to Quash
3:18-mc-80080-JCS

communications to disclose them); *In re Facebook, Inc.*, 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012) (noting that, whether under Fed. R. Civ. P. 45 or 28 U.S.C. § 1782, "[t]he case law confirms that civil subpoenas may not compel production of records from providers like Facebook.

To require a different procedure would run afoul of the 'specific [privacy] interests that the [SCA] seeks to protect"') (quoting *Theofel*, 359 F.3d at 1074 (9th Cir. 2004)).[9] Indeed, the SCA merely *permits* production of communications by a service provider, and does not *require* such production. *See id*.[10] Relevant discovery is in the possession or control of Defendants; Plaintiffs' claims are leveled against them, not Jane Doe or other anonymous Discord users, and Defendants have the ability to request backups of allegedly deleted communications from Discord. Plaintiffs can thus obtain requested information that is actually relevant through conventional party discovery, rather than by trying to circumvent the SCA. The Court should require them to do so.

## 3.0 CONCLUSION

For the foregoing reasons, the Court should quash Plaintiffs' Subpoena.

Dated: June 27, 2018.

Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058

*Attorneys for Jane Doe*

---

[9] Indeed, after determining that the subpoena should be quashed for violation of the SCA, the court in *Theofel* found it lacked jurisdiction to determine the question of whether proffered consent under the SCA was sufficient to allow Facebook to disclose the requested communications. *See id*.

[10] The only provision of the SCA requiring disclosure of communications is 18 U.S.C. § 2703, which only requires compliance with requests from government entities. That is not the case here.

Case No. 3:18-mc-80080-JCS

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of June 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF upon counsel for Respondents, the Plaintiffs in the Underlying Action:

Sean P. Rodriguez
BOIES SCHILLER FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612

*Attorneys for Respondents,*
*the Plaintiffs in the Underlying Action*

I further certify that on this 27th day of June 2018, I served a true and correct copy of the foregoing document upon the following participants, listed below, via electronic mail:

Catherine M. del Fierro
PERKINS COIE LLP
1201 Third Ave., Ste. 4900
Seattle, WA 98101
CdelFierro@perkinscoie.com

*Attorney for Discord, Inc.*

Respectfully submitted,

_____
Employee,
Randazza Legal Group, PLLC