1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7   ELIZABETH SINES, et al.,                        Case No.  18-mc-80080-JCS

              Plaintiffs,
8

9        v.                                          **ORDER REGARDING MOTION TO
                                                      QUASH SUBPOENA**
10  JASON KESSLER, et al.,                           Re: Dkt. No. 1

              Defendants.
11

12  **I.      INTRODUCTION**

13          An anonymous accountholder identified here as Jane Doe moves to quash a subpoena

14  served on Discord, Inc. ("Discord") issued in a lawsuit pending in the United States District Court

15  for the Western District of Virginia (the "Virginia Action"[1]) against the alleged organizers of the

16  "Unite the Right" event that occurred in Charlottesville, Virginia on August 11 and 12, 2017.

17  Neither Doe nor Discord are parties to the Virginia Action.  The subpoena seeks to discover, *inter

18  alia*, Doe's account information and the contents of any messages to, from, or concerning her

19  Discord account under the name "kristall.night."  In addition, the subpoena seeks to discover the

20  account information and message contents of the named Defendants and of more than thirty other

21  anonymous non-parties.  Doe contends that, in addition to being overbroad, the subpoena violates

22  her rights under the First Amendment and the Stored Communications Act (the "SCA").  The

23  Court finds the matter suitable for resolution without oral argument and VACATES the hearing

24  previously set for August 10, 2018.  For the reasons stated below, the Motion is GRANTED in

25  part and DENIED in part.

26

27

28  _____

[1] *Sines v. Kessler*, No. 3:17-cv-00072-NKM-JCH (W.D. Va.).

United States District Court
Northern District of California

II.     BACKGROUND

A.     The Virginia Action

The Virginia Action arises out of the violent rallies, known as "Unite the Right," that occurred on August 11 and 12, 2017 in Charlottesville, Virginia. *See generally* Libling Decl. (dkt. 9) Ex. 1 (1st Am. Compl. ("FAC")). Plaintiffs are nine individuals who were physically and emotionally injured at the events, which they allege was organized by white supremacists and neo-Nazis for the purpose of terrorizing residents of Charlottesville and engaging in violence. *Id.* ¶¶ 1–6, 10–19. Plaintiffs allege that Unite the Right led to three deaths and a declaration of a state of emergency by the Governor of Virginia. *Id.* ¶¶ 224, 278. Defendants include fifteen alleged event organizers and attendees who, Plaintiffs contend, "joined together for the purpose of inciting violence and instilling fear." *Id.* ¶¶ 3, 20–44. Plaintiffs characterize Defendants as "white supremacist, white nationalist, and neo-Nazi," while Doe refers to the ideology of Unite the Right attendees as "Alt-Right," a terms that some defendants and coconspirators have allegedly used to describe themselves. *Id.* ¶¶ 21, 45, 72 & n.4; Mot. (dkt. 1) at 1.

In their opposition to the present motion, Plaintiffs succinctly describe the claims in their First Amendment Complaint, and the elements they need to prove that are relevant to the subpoena, as follows:

> Plaintiffs in the Virginia Action assert conspiracy to violate Plaintiffs' civil rights in contravention of 42 U.S.C. § 1985(3); failure to prevent that conspiracy under 42 U.S.C. § 1986; civil conspiracy under Virginia law; negligence per se under Virginia law; subjecting Plaintiffs to violence and intimidation in violation of Virginia law; and assault, battery, and intentional infliction of emotional distress under Virginia law. *See* FAC ¶¶ 336–70. Among the elements of those causes of action are that Plaintiffs must prove that Defendants "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan," *Hinkle v. City of Clarksburg, W. Va.*. 81 F.3d 416, 421 (4th Cir. 1996); that Defendants' conspiracy had "the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," 42 U.S.C. § 1985(3), which can be proven through "racially motivated violence," *United States v. Roof*, 225 F. Supp. 3d 438, 448 (D.S.C. 2016); that Defendants were responsible for "intimidation or harassment" or "violence," Va. Code § 8.01-42.1; and that Defendants' actions were "motivated by racial, religious, or ethnic animosity," Va. Code § 8.01-42.01.

United States District Court
Northern District of California

Opp'n (dkt. 8) at 2.  The Western District of Virginia denied in large part several motions to dismiss on July 9, 2018.  *See generally Sines v. Kessler*, __ F. Supp. 3d __, No. 3:17-cv-00072, 2018 WL 3345300 (W.D. Va. July 9, 2018).

### B.   Discord and Jane Doe's Purported Involvement

Plaintiffs contend that Defendants used Discord's social-networking services to organize and implement their conspiracy.  *Id.* at 3.  Discord provides "private, invite-only 'servers'" that function as an instant messaging platform for only those with access to the server.  *Id.* (citing FAC ¶ 71).  Servers can further be divided into "channels" to allow for discussions of specific topics. *Id.* (citing FAC ¶ 71).  Plaintiffs allege that Defendants used a server called "Charlottesville 2.0" and at least forty-three channels to "to plan and direct illegal acts."  *Id.* (citing FAC ¶¶ 72, 76). Plaintiffs have access to records that they believe constitute at least some communications made on the Charlottesville 2.0 Discord server because the communications were leaked by the website "Unicorn Riot Discord Leaks."[2]  Libling Decl. ¶ 6.  Plaintiffs believe the leak was not comprehensive for several reasons, including that the channel for the "leadership" of Unite the Right was not released.  *Id.*; Opp'n at 7 (citing FAC ¶ 83 & n.6).

Plaintiffs allege that statements from the Unicorn Riot Discord leaks include:

- "This is not an attack on your heritage this is an attack on your racial existence. FIGHT BACK OR DIE."

- "I'm ready to crack skulls."

- "[F]ocus on blocking and pushing back in ways that don't look like assault."

- "If you get PVC get schedule 80 for thicker thumping."

- "Don't carry anything that's explicitly a weapon.  Flag poles and signs work, but openly carrying obvious weaponry is probably not a good idea."

Opp'n at 4 (citing FAC ¶¶ 90, 95–97, 111).  Plaintiffs allege that Defendants and non-party coconspirators made such statements.  *See id.*  According to Plaintiffs, these and other statements show that Defendants and coconspirators had a conspiratorial agreement, and some statements

---

[2] Available at http://discordleaks.unicornriot.ninja/discord (last accessed August 6, 2018).

3

1    show that the conspiracy was based on religious and racial animus.  *See id*. at 3–5.

2         On August 14, 2017, Discord shut down the servers connected to Unite the Right in an

3    effort to denounce hate and violence.  Libling Decl. Ex. 4.  Discord retains backup tapes of the

4    servers, but the data formerly hosted on them is no longer available through Discord's website or

5    application to Defendants or other participants.  Libling Decl. ¶ 9.

6         Doe is the operator of the Discord alias or handle "kristall.night," a participant in the

7    Charlottesville 2.0 messages released in the Unicorn Riot leaks.  *See* Mot. at 1; Opp'n at 7; Reply

8    Ex. 1 (Doe Decl.) ¶ 4.  Plaintiffs contend that statements she made fall into one of three relevant

9    categories:

> (i) She participated in the planning of Unite the Right by instructing others to "[p]urchase self defense insurance," "[g]et there before dark" on Friday, August 11, for the torch march, and, during the rally itself, informing other Discord users that a "shield wall should be at the ready in case these people get pushed in your direction." FAC ¶ 105; Libling Decl.¶ 8, Exs. 10, 15–16.

> (ii) She made statements on the Charlottesville 2.0 server indicating intent to perpetrate violence and intimidation, including stating, "If you want people to fight in the streets, you don't attract them by being nice," telling another Discord participant that they could recruit others "[b]y fighting, and inspiring others to do the same," characterizing Unite the Right and a precursor event in May 2017 as "violent political rallies," instructing others to bring "shields" and "a helmet" but not "weapons you're inexperienced with using in a fight in a crowded area," advising others on which flagpoles would be "useful to double as spears," and encouraging others to bring a short flagpole "if you want to use is as a club." Libling Decl. ¶ 8, Ex. 8–9, 11–14.

> (iii) She made statements confirming the conspiracy's racial and religious animus. For example, she asked "Can we please start chasing these fucking degenerates into hiding?" Libling Decl. ¶ 8, Ex. 5. She declared, "Without complicit whites, Jews wouldn't be a problem," and "I hate miscegenation so much more after actually talking to mixed race people about their identity." *Id*., Exs. 6–7.

24   Opp'n at 7–8.

25        **C.      The Subpoena and the Protective Order**

26        Because Plaintiffs believe that the Unicorn Riot leaks are not comprehensive, they issued a

27   subpoena to Discord seeking all documents and communications related to Unite the Right.  *See*

28   *generally* Mot. Ex. 1 (subpoena); Libling Decl. Ex. 2 (same).  Of particular interest to this motion

United States District Court
Northern District of California

4

is Document Request 7, which requests "[a]ll documents and communications to, from, or concerning the following individuals, including user information about the following individuals' Discord accounts, as well as any images or documents posted by the following individuals." *Id.* at 9. The subpoena then lists forty-nine individuals and/or account names, including all Defendants and more than thirty non-parties. *Id.* at 9–11. Doe's handle, "kristall.night," is one of those listed. *Id.*

The Virginia court issued a protective order in connection with the discovery in this case. *See generally* Libling Decl. Ex 3 (protective order). The protective order provides that parties can designate information provided in discovery as either "confidential" or "highly confidential." *Id.* ¶ 2. Information designated as "confidential" may be disclosed only to the parties, counsel for the parties, expert witnesses, trial or deposition witnesses, stenographers and videographers, the Court, and any other person agreed to in writing by the parties. *Id.* ¶ 4. "Highly confidential" information may be disclosed only to counsel for the parties, expert witnesses, stenographers and videographers, the Court, and any other person agreed to in writing by the parties, as well as to any witness who previously authored, viewed, or received the information outside the context of litigation. *Id.* ¶ 5. The protective order further stipulates that confidential and highly confidential information can only be used for the purposes of the Virginia Action. *Id.* at 5.

### D.      Contentions of the Parties

#### 1.      Doe's Motion

Doe filed her present motion to quash on May 16, 2018, requesting that this Court quash the entire subpoena. Mot. at 3, 17. Doe asserts that the subpoena violates her First Amendment rights to associate and speak anonymously, that it is overbroad, and that it violates the Stored Communications Act (the "SCA"). *See generally id.*

Doe argues that she has standing to move to quash the subpoena on behalf of herself and the other forty-eight "similarly situated" Discord users.[3] *Id.* at 5. For standing to protect her own information, Doe cites subsections (d)(3)(a)(iii) and (iv) of Rule 45 of the Federal Rules of Civil

---

[3] Doe does not specify who these other Discord users are—presumably they are the other Discord users listed in Document Request 7. That list includes Defendants and non-parties.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Procedure,[4] arguing that because the subpoena seeks information about her, including identifying

2    information, she is affected by it and thus has standing to bring the motion. *Id*. In support of the

3    argument that Doe has standing to challenge the subpoena on behalf of other Discord users, Doe

4    quotes *Faith Baptist Church v. Waterford Township*, 522 F. App'x. 322, 330 (6th Cir. 2013),

5    which states that "[s]tanding is relaxed in the First Amendment context 'because of a judicial

6    prediction or assumption that the policy's very existence may cause others not before the court to

7    refrain from constitutionally protected speech or expression'" (quoting *Berner v. Delahanty*, 129

8    F.3d 20, 24 (1st Cir. 1997) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). Mot. at

9    5. Doe also states that the Court may quash the subpoena *sua sponte*. *Id*. at 5–6 (citing *Rodrigues*

10   *v. Ryan*, No. CV 16-08272-PHX-DGC (ESW), 2017 WL 5068468, at *1 (D. Ariz. Nov. 3, 2017),

11   *aff'd*, 718 F. App'x 577 (9th Cir. 2018)).

12       Furthermore, Doe contends that the Court should apply section 1987.1 of the California

13   Code of Civil Procedure. *Id*. at 4. Subsection (b)(5) of that statute states that a "person whose

14   personally identifying information . . . is sought in connection with an underlying action involving

15   that person's exercise of free speech rights" can move to quash a subpoena. *Id*. (quoting Cal. Civ.

16   Proc. Code § 1987.1(b)(5)). Doe asserts that "the articulated protections for anonymous speakers

17   in [section] 1987.1 are substantive and are based upon the same free speech concerns that animate

18   California's Anti-SLAPP statute." *Id*. Doe then cites *Unites States ex rel. Newsham v. Lockheed*

19   *Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999), arguing that because the Ninth Circuit

20   held that California's Anti-SLAPP statute applied in federal court, section 1987.1 also necessarily

21   applies "to any non-federal claims based on the exercise of First Amendment rights." *Id*.

22       Doe also argues that the subpoena violates her First Amendment rights to anonymous

23   speech and association. Mot. at 6–14. According to Doe, she and the other Discord users have

24

25   ───────────────
     [4] Rule 45 reads in relevant part:
26          (3) Quashing or Modifying a Subpoena
                (A) *When Required*: On timely motion, the court for the district where compliance
27              is required must quash or modify a subpoena that: . . .
                        (iii) requires disclosure of privileged or other protected matter, if no
28                      exception or waiver applies; or
                        (iv) subjects a person to undue burden.

"controversial political ideas" and "[t]here is no doubt" that compliance with the subpoena will lead to these individuals being "outed." *Id*. at 6. Doe believes that disclosure of her identity "can and will result in serious harm to [her] personal and professional [life]". *Id*. at 6–7. In support of this claim, Doe cites several newspaper articles and blogs that describe the practice of "doxxing," or exposing identifying information of, individuals active in the "alt-right" community in order to publicly shame them. *Id*. at 7 & Exs. 4–5, 7–10. The articles tell stories of individuals who have been disowned by their families and fired from their jobs after being "doxxed." *Id*. Doe also submits a declaration from a pseudonymous declarant who states that he identifies with the "alt-right" and fears that he will be harmed as a result of a separate subpoena issued to Twitter, Inc, which is not implicated by the present motion before this Court.[5] *Id.* Ex. 5. Doe contends that if Discord complies with the subpoena, members of the "alt-right" will fear that their communities will find out about their political views. Mot. at 6–7. According to Doe, this fear will create a chilling effect on political speech, which is precisely what the First Amendment seeks to prevent. *Id*.

Doe asserts that the Court should apply the standard articulated in *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001), to determine whether it is appropriate to disclose Doe's identity. Mot. at 9. The *2TheMart.com* test contains four factors or requirements, looking to whether:

> (1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or disprove that claim or defense is unavailable from any other source.

*2TheMart.com*, 140 F. Supp. 2d at 1095. Doe argues that this test indicates that Doe's identity should not be disclosed. Mot. at 9.

According to Doe, the subpoena was not issued in good faith because it is an attempt to

---

[5] The Western District of Virginia denied a defendant's motion for a protective order to limit the production of documents in response to that subpoena. *See Sines v. Kessler*, No. 3:17-cv-00072, ECF Doc. No. 304 (Apr. 20, 2018).

United States District Court
Northern District of California

identify "alt-right" members in order to "destroy" their lives.  *Id.* at 10.  This purpose is clear, Doe argues, because Plaintiffs have not named any Doe defendants they might wish to add to the case; therefore, the only other reason to uncover Doe's identity is to "dox" her.  *Id.*  Doe contends that the broad scope of the subpoena, which seeks "the information of anyone who has ever communicated with Jane Doe or other Discord users," is further proof that the subpoena was issued in bad faith.  *Id.*  Doe also argues that the information sought does not relate to a core claim or defense and is not materially relevant to a core claim or defense.  *Id.*  She asserts that only "a small fraction . . . could possibly be relevant to any claim or defense" because the subpoena is so broad.  *Id.*  According to Doe, the information can be sought directly from Defendants[6] rather than through a third-party subpoena.  *Id.* at 10–11.

Next, Doe argues that the subpoena violates her First Amendment right to association.  *Id.* at 11.  Citing *NAACP v. Alabama*, 357 U.S. 449 (1958), Doe contends that the Supreme Court has found that disclosing membership lists can induce members to leave the group due to their fear of the consequences of their exposure.  Mot. at 11.  Because the subpoena seeks the user information of those with unpopular political beliefs, Doe argues, it violates the First Amendment.  *Id.* at 12.  Doe recognizes that the right to association is not absolute, and addresses the Ninth Circuit's test to determine when discovery disclosure outweighs the right to association.  *Id.*  First, Doe argues that she can establish a prima facie case of First Amendment infringement because it is clear that disclosure would cause membership withdrawal, harassment, or other consequences that "chill" the members' associational rights.  *Id.* at 12–13 (citing *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349–50 (9th Cir. 1988)).  Doe again cites the articles that show the consequences of "doxxing" to support her argument that disclosure "would . . . have the inevitable effect of causing members of this political movement to withdraw from it."  *Id.*  Second, Doe contends that Plaintiffs cannot show that compliance with the subpoena is rationally related to a compelling interest.  *Id.* at 13–14.  Doe again points to the broad scope of the subpoena to argue

---

[6] The Motion states, "Thus, Plaintiffs may obtain any relevant communications from Plaintiffs [sic] . . . ."  Mot. at 10–11.  The Court believes Doe meant that Plaintiffs can obtain information from Defendants.

United States District Court
Northern District of California

that it seeks more information than would be relevant to a core claim or defense, and that relevant information can be sought from Defendants directly rather than through the subpoena. *Id.* at 14.

Next, Doe argues that the subpoena is overbroad, unduly burdensome, and grossly disproportionate. *Id.* Doe contends that, while Rule 26 of the Federal Rules of Civil Procedure dictates the scope of discovery, Plaintiffs must go beyond Rule 26 and show that the information sought is "highly relevant" to their claims because there are First Amendment issues at stake. *Id.* at 15 (citing *Perry v. Schwarzenegger*, 591 F.3d 1126, 1141 (9th Cir. 2010)). According to Doe, the subpoena fails this test because it does not limit its scope to communications about the alleged conspiracy, instead requesting information "on both personal and private matters with no bearing whatsoever on this case." *Id.* Furthermore, Doe contends the subpoena necessarily seeks communications from additional third parties with no connections to any parties in the case because it calls for all communications "to, from, and concerning" the individuals listed in Document Request 7. *Id.* at 15–16.

Doe's final argument is that the subpoena violates the Stored Communications Act (the "SCA"). *Id.* at 16. Under the SCA, an electronic communication service ("ECS") providing services to the public cannot disclose the contents of communications made while in electronic storage by that ECS. *Id.* (citing 18 U.S.C. § 2702(a)). Because Document Request 7 requests the contents of messages stored by Discord, Doe argues that it violates the SCA. *Id.* Doe claims that Discord and Plaintiffs may be civilly liable if Discord complies with the subpoena. *Id.* at 17.

### 2.    Plaintiffs' Opposition

In their opposition brief, Plaintiffs contend that Doe does not have standing to move to quash the subpoena on behalf of herself or any other user. Opposition at 10. According to Plaintiffs, Doe lacks standing because she is a non-party moving to quash a subpoena served on different non-party. *Id.* (citing *Proficio Mortg. Ventures, LLC v. Fed. Sav. Bank*, No. 2:15-CV-510-RFB-VCF, 2016 WL 1465333, at *3 (D. Nev. Apr. 14, 2016); *Salem Vegas, L.P. v. Guanci*, No. 2:12-CV-01892-GMN, 2013 WL 5493126, at *3 (D. Nev. Sept. 30, 2013)). Plaintiffs argue that a *party* has standing to move to quash when it "'claims a personal right or privilege with respect to the documents requested in the subpoena.'" *Id.* at 11 (quoting *Dale Evans Parkway*

9

United States District Court
Northern District of California

*2012, LLC v. Nat'l Fire & Marine Ins. Co.*, No. ED CV 15-979-JGB (SPX), 2016 WL 7486606, at *3 (C.D. Cal. Oct. 27, 2016)). Plaintiffs contend that under this rule, Doe does not have standing since she is a non-party. *Id.* However, even if Doe could claim standing under this principle, she would only have standing on behalf of herself, not any other individuals, and standing would only extend to documents for which she could claim "a personal right or privilege." *Id.*

Plaintiffs also argue that the SCA does not alter the analysis. *Id.* While Plaintiffs concede that Discord needs consent to produce the contents of communications it stores, 18 U.S.C. § 2702(b)(3), Plaintiffs contend that Discord does not need consent to "'divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications . . . ) . . . to any person other than a governmental entity.'" *Id.* at 12 (quoting 18 U.S.C. § 2702(c)(6)) (ellipses in original). Thus, if Doe has standing under the SCA, it would only apply to the content of messages for which no valid consent has been obtained. *Id.*

Even if Doe has standing, Plaintiffs argue that she cannot establish any ground for quashing the subpoena. *Id.* at 12. First, Plaintiffs contend that the discovery sought is relevant, necessary, and proportional to the needs of the case. *Id.* at 13. According to Plaintiffs, communications already leaked from Discord show Defendants' violent intent and animus, making Discord communications "evidence at the heart of the case." *Id.* Plaintiffs argue that communications by Doe show that she helped plan the event and "shared Defendants' goals of violence and intimidation and their motivation for racial animus." *Id.* (citing Libling Decl. ¶ 8 & Exs. 5–16). Thus, Plaintiffs assert that the subpoena aims to discover relevant information that goes to Plaintiffs' factual and legal theories. *Id.* The information is also proportional to the needs of the case, according to Plaintiffs, because individuals named in the subpoena have already been connected to Unite the Right through the Unicorn Riot leaks. *Id.* Moreover, Plaintiffs contend that because Discord shut down the servers used to plan the event, only Discord has access to that information—Defendants no longer have such access. *Id.*

Furthermore, according to Plaintiffs, the subpoena is not overbroad and does not seek irrelevant information. *Id.* at 14. Due to the requirements of the SCA, at present Discord is proposing to produce only the account information of those listed in Document Request 7, which,

10

United States District Court
Northern District of California

1    Plaintiffs argue, is "classic discoverable information" because it simply identifies participants and

2    witnesses. *Id.* (citing *Drummond C, Inc. v. Collingsworth*, Nos. 13-mc-80169-JST (JCS) & 13-

3    mc-80171-JST (JCS), 2013 WL 6074157 (N.D. Cal. Nov. 18, 2013)). Plaintiffs state candidly that

4    they "ultimately seek the messages exchanged by Doe and others on Discord because it is those

5    messages that may be the best evidence of how the alleged conspiracy was planned and executed,"

6    but acknowledge "that the messages' content will only be produced if the sender, or a recipient,

7    consents to such production."[7] *Id.* According to Plaintiffs, the SCA's consent requirement

8    eliminates any concern of overbreadth, and the subpoena will not compel production of personal

9    or private matters that are unrelated to the case. *Id.* at 14–15. Plaintiffs further argue that Doe has

10    not "met her burden of demonstrating that her personal or private matters are within the scope of

11    the Subpoena's request" through, for example, an affidavit, and thus has not met Rule 45(d)(3)'s[8]

12    burden of persuasion. *Id.*

13          Plaintiffs then argue that any potential hardship to Doe is insubstantial, as the subpoena

14    does not infringe on her First Amendment right to anonymous speech or to association. *Id.* at 16–

15    20. Turning first to Doe's right to anonymous speech, Plaintiffs contend that most of the

16    subpoena is unrelated to anonymous speech, as much of the information sought was written by

17    named Defendants. *Id.* at 16. Plaintiffs argue that Doe's concern that they plan to "doxx" her is

18    unpersuasive, because the stipulated protective order entered by the Western District of Virginia

19    allows material to be classified into different categories, thereby placing restrictions on the people

20    who can see information in each classification.[9] *Id.* at 16–17 (citing *In re Anonymous Online*

21    *Speakers*, 661 F.3d 1168, 1176–78 (9th Cir. 2011) (noting that the "parties have a protective order

22    in place that provides different levels of disclosure for different categories of documents to various

23

24    ———————————

[7] Plaintiffs assert that such consent may either be obtained voluntarily or compelled through
25    discovery directed to the sender or recipient of the communication, but because the subpoena at
issue here is directed to Discord rather than to Doe or anyone she communicated with, this
26    subpoena cannot compel production of the content of communications without a participant's
consent. Opp'n at 15 n.4 (citing district court decisions).
27    [8] Plaintiffs' opposition mentions Rule 45(**c**)(3); however, that rule does not exist. It is clear from
the context that Plaintiffs meant to cite Rule 45(**d**)(3).
28    [9] Plaintiffs note that not even Plaintiffs themselves (as opposed to their counsel) can see "highly
confidential" material. Opposition at 17.

1   recipient," and that "a protective order is just one of the tools available to the district court to

2   oversee discovery of sensitive matters that implicate First Amendment rights").

3       In addition, Plaintiffs contend that the Ninth Circuit has not adopted the *2TheMart.com* test

4   that Doe asks the Court to apply. *Id.* at 17–18. Even if the Court were to apply the *2TheMart.com*

5   test, Plaintiffs assert that its factors indicate that the motion should be denied. *Id.* at 18. First,

6   Plaintiffs argue the subpoena was issued in good faith because the materials already released

7   provide evidence of a violent conspiracy. *Id.* Next Plaintiffs contend that "statements evidencing

8   a conspiracy to do violence and intimidate are 'relevant' to and at the 'core' of the Virginia

9   Action." *Id.* Finally, because only Discord, and not Defendants, has the full record of the

10  communications, there is no other source available that Plaintiffs can use to establish the claim.

11  *Id.*

12      Plaintiffs also assert that the subpoena does not violate Doe's right to association. *Id.* at

13  19. According to Plaintiffs, Doe's fears of negative consequences are unfounded because the

14  protective order will "provide adequate protection, and Doe has provided no evidence whatever

15  [sic] to suggest that Plaintiffs will engage in any untoward conduct," which Plaintiffs argue would

16  be necessary to make a prima facie showing of First Amendment infringement. *Id.* at 19–20.

17  Plaintiffs further contend that, even if Doe could make a prima facie case, the discovery sought is

18  "'highly relevant' to proving Plaintiffs' allegations," *id.* (citing *Perry*, 591 F.3d at 1141), because

19  it only seeks the information of those who have been connected to the conspiracy through the

20  Unicorn Riot leaks. *Id.* Because only Discord has access to the relevant communications, and not

21  Defendants or other purported coconspirators, the subpoena is the "least restrictive means" of

22  obtaining the information. *Id.* (citing *Brock*, 860 F.2d at 349).

23          **3.    Doe's Reply**

24      Doe reasserts in her reply her argument that she has standing to challenge the subpoena.

25  Reply (dkt. 14) at 2. She argues that cases cited by Plaintiffs hold that "a non-party must

26  demonstrate a personal right or privilege in response documents to challenge a subpoena to a non-

27  party." *Id.* (citing *Proficio Mortg. Ventures*, 2016 WL 1465333, at *8). Doe claims that she has a

28  personal right or privilege in the information requested from Discord. *Id.* According to Doe, the

United States District Court
Northern District of California

court in *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 974 (C.D. Cal. 2010), found that information in a social media profile and inbox is similar to bank or employment records. Reply at 3. Doe contends that because individuals have a personal right in these records, they also have a right in their social media profile and inbox. *Id.* Doe also reasserts her argument that the Court should apply section 1987.1 of the California Code of Civil Procedure. *Id.* at 4.

Doe disagrees with Plaintiffs' contention that Discord's unwillingness to release communications without Doe's consent indicates that the subpoena is not impermissibly broad. *Id.* at 4–5. The request, according to Doe, is still unlimited because it seeks the content of messages to, from, and about Doe; in fact, Doe may not have seen all the communications Plaintiffs' seek that relate to her because she may not be the sender or recipient of messages that are about her. *Id.* at 5. Doe also contends that the leaked Unicorn Riot messages do not show that she was a coconspirator in the alleged violent conspiracy. *Id.* at 6–7. Instead, Doe asserts that the messages sent by "kristall.night" are suggestions and advice, rather than specific directions. *Id.* Doe argues that Discord's assertion of its obligations under the SCA does not change the breadth of the subpoena, and that Plaintiffs must withdraw the subpoena and issue a new, narrower version. *Id.* at 8.

In addition, Doe reiterates her argument that the subpoena violates her First Amendment rights to anonymous speech and association. *Id.* at 8. Doe disagrees with the notion that the protective order will protect her and the other non-parties, arguing that "'[t]he mere assurance that private information will be narrowly rather than broadly disseminated . . . is not dispositive.'" *Id.* at 8–9 (quoting *Perry*, 591 F.3d at 1160 n.6). Citing *Dole v. Service Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1461 (9th Cir. 1991),[10] Doe insists that any disclosure of message content and the identities of speakers who thought they were speaking anonymously is enough to chill speech, even if "a protective order lessens the likelihood that the worst possible outcome of disclosure will occur." *Id.* at 9.

---

[10] In *Dole*, the court held that knowledge that the Department of Labor would have access to union meeting minutes, even if limited by a "need to know" policy, could lead some members to speak less freely or stop attending meetings. *Dole*, 950 F.2d at 1461.

1    Doe fears that Plaintiffs will use the discovery process to "out" members of the "alt-right,"

2    contending that Roberta Ann Kaplan, lead council in the underlying suit, "has made multiple

3    public statements indicating that she has a personal vendetta against anyone involved with the "alt-

4    right." *Id*. at 10.  Doe cites articles from *The New York Times*, *Daily Kos*, and *Vox,* which state

5    that either the purpose or a likely outcome of the lawsuit is to "dismantle the 'alt-right'" and

6    expose its funding streams.  *Id*. at 10–11 & Exs. 2–4.  Furthermore, Doe again invokes the

7    *2TheMart.com* test, arguing that, because the subpoena is "grossly overbroad," it does not relate to

8    a "core claim or defense."  *Id*. at 10.

9    Finally, Doe reiterates her argument that the subpoena violates the SCA.  *Id*. at 11–14.  She

10   contends that because Document Request 7 seeks information that requires sender or recipient

11   consent, and Plaintiffs have not obtained consent, the entire subpoena should be quashed.  *Id*. at

12   12.  According to Doe, Plaintiffs must serve discovery requests on Defendants rather than using a

13   third-party subpoena.  *Id*. (citing *Mintz v. Mark Bartelstein & Assocs.*, 885 F. Supp. 2d 987, 991

14   (C.D. Cal. 2012)).[11]

## III.   ANALYSIS

### A.   Legal Standard

17   Under Rule 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure, a party seeking

18   enforcement of a subpoena may bring a motion in "the court for the district where compliance is

19   required for an order compelling production or inspection."  Fed. R. Civ. P. 45(d)(2)(B)(i).  Rule

20   45 also states that a court must quash a subpoena, upon timely motion, if it "requires disclosure of

21   privileged or other protected matter" or "subjects a person to undue burden."  Fed. R. Civ. P.

22   45(d)(3)(A)(iii)-(iv).  Motions to quash are evaluated in the context of Rule 26, which states that

23   "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

24   claim or defense and proportional to the needs of the case, considering the importance of the

---

[11] Doe goes on to explain the "proper procedural sequence" articulated in *Mintz*, stressing that Plaintiffs can only obtain subscriber information from the service provider and not the messages themselves.  Reply at 13.  Plaintiffs must serve a subpoena on the speaker him or herself, according to Doe, in order to obtain consent for the service provider to release the content of the communications.  *Id*.

United States District Court
Northern District of California

1   issues at stake in the action, the amount in controversy, the parties' relative access to relevant

2   information, the parties' resources, the importance of the discovery in resolving the issues, and

3   whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.

4   Civ. P. 26(b)(1).

5       **B.      Venue**

6           Rule 45 states that "the court for the district where compliance is required" has primary

7   authority over all subpoena-related motions.  Because Discord is located in San Francisco,

8   California, and compliance with the subpoena is required in Oakland, California, this Court is the

9   proper venue for the motion.  *See* Mot. at 4.

10      **C.      Doe Has Standing to Challenge the Subpoena on Behalf of Herself Only**

11          Doe argues that she has standing to move to quash the subpoena on her own behalf with

12  respect to her own personal information.  Mot. at 5.  The Court agrees.  "[A] party lacks standing

13  to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege

14  with respect to the documents requested in the subpoena."  *G.K. Las Vegas Ltd. P'ship v. Simon*

15  *Prop. Grp., Inc.*, No. 2:04-cv-1199-DAE-GWF, 2007 WL 119148, at *4 (D. Nev. Jan. 9, 2007).

16  Although Doe is not a party, decisions in this district have found that non-parties with a "personal

17  right or privilege" in the information sought by the subpoena have standing, particularly where the

18  information is protected by the SCA.  *See Can't Live Without It, LLC v. ETS Express Inc.*, No. 17-

19  mc-80144-MEJ, 2017 U.S. Dist. LEXIS 202010 (N.D. Cal. Dec. 17, 2017) (granting a motion to

20  quash brought by a non-party when the subpoena sought SCA protected information without

21  explicitly addressing the question of standing); *see also Chevron Corp. v. Donziger*, No. 12-mc-

22  80237 CRB, 2013 WL 4536808, at *5 (N.D. Cal. Aug. 22, 2013) (holding that "[o]wnership of the

23  email addresses gives the [non-party] Doe movants a personal stake in the outcome of this dispute,

24  and therefore standing to quash the subpoenas").  Furthermore, in *Crispin v. Christian Audigier,*

25  *Inc.*, 717 F. Supp. 2d 965 (C.D. Cal. 2010), the court held that "an individual has a personal right

26  in information in his or her profile and inbox on a social networking site and his or her webmail

27  inbox in the same way that individual has a personal right in employment and bank records," and

28  that "this personal right is sufficient to confer standing to move to quash a subpoena seeking such

United States District Court
Northern District of California

15

information." *Id.* at 974.  The subpoena at issue here seeks similar information, such as "documents and communications to, from, or concerning [Doe]" and "images or documents posted by [Doe]." Opp'n Ex. 1 at 9 (Document Request 7).  Thus, Doe has standing to move to quash the subpoena on her own behalf.

Doe also argues that she has standing to quash the subpoena on behalf of all other Discord users whose accounts are named in the subpoena.  Mot. at 5.  The Court disagrees.  In general, "[i]t is axiomatic that in order to have standing to bring a claim in federal court a party must have a personal stake in the outcome." *Chevron*, 2013 WL 4536808, at *4 (citing *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661–62 (2013)).  However, courts have recognized a "limited exception" to this rule, allowing individuals to assert the rights of third parties when "'the party asserting the right has a close relationship with the person who possesses the right'" and "'there is a hindrance to the possessor's ability to protect his own interests.'"  *Id.* (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)).  Here, Doe does not argue that she has a close relationship with the other Discord users, nor does she claim that they are unable to protect their own interests.  Instead, Doe argues that standing should be relaxed because of the First Amendment issues at stake, citing *Faith Baptist Church v. Waterford Township*, 522 F. App'x 322 (6th Cir. 2013) (holding that standing should be relaxed in the context of the First Amendment when church members moved to challenge city officials' threats to prosecute church members).  Standing to claim injury from threats of prosecution under a criminal statute is not analogous to standing to move to quash a subpoena.  *See Chevron*, 2013 WL 4536808, at *5 ("But, a facial challenge to the chilling effect of a statute brought by a third party is not analogous to the Doe movants' motion to quash Chevron's subpoenas.")  While Doe can assert her own First Amendment rights in opposition to the subpoena, the fact that she challenges the subpoena on First Amendment grounds does not warrant the relaxation of standing.  *See id.*[12]  Because Doe only has standing to bring the motion on her

---

[12] Because the Court finds that Doe has standing on other grounds, it does not address whether to apply California Code of Civil Procedure section 1987.1.  Even if that statute were to apply, it would only give Doe standing on behalf of herself and not on behalf of the other non-parties.  Section 1987.1 states that a "person whose personally identifying information . . . is sought in connection with an underlying action involving that person's exercise of free speech rights" can bring a motion to quash.  The code provision does not say that a person can bring a motion to

United States District Court
Northern District of California

own behalf, the remainder of the analysis focuses only on Document Request 7, the portion of the subpoena that requests Doe's information.

### D.   Doe Has Established Grounds to Quash Only a Portion of the Subpoena

Rule 45(d)(3), addressing when a court must quash a subpoena, states:

> (3) Quashing or Modifying a Subpoena.
>
> > (A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
> >
> > > (i) fails to allow a reasonable time to comply;
> > >
> > > (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> > >
> > > (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> > >
> > > (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3).

Doe argues that the subpoena should be quashed because: (1) the subpoena violates the SCA, Mot. at 16–17; (2) the subpoena is overbroad, unduly burdensome, and not proportional to the needs of the case, *id*. at 14–16; and (3) the subpoena violates Doe's First Amendment rights to anonymous speech and association, *id*. at 6–14.  Although the subpoena implicates both the SCA and Doe's First Amendment rights, the Court is not persuaded that the subpoena must be quashed except to the extent that it calls for producing the content of communications without consent of any party to the communications.

### 1.   Part of the Subpoena Violates the Stored Communications Act

Doe argues that the subpoena must be quashed because it violates the SCA by seeking "identifying information related to Discord accounts and the contents of communications both to and from individuals operating these accounts." Mot. at 16–17.  The Court agrees that the subpoena requests information that the SCA prohibits Discord from disclosing to Plaintiffs

---

quash on behalf of others; instead it focuses on personal rights and identifying information.  As such, if it were to apply, it would not change the Court's decision that Doe only has standing to challenge the subpoena's request for Doe's own personal information.

without consent; however, this violation does not require the Court to quash the entire subpoena. The SCA prohibits any "person or entity providing an electronic communication service to the public" from "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service" without the lawful consent of the sender or recipient of the communication.  18 U.S.C. § 2702(a), (b).  There are no exceptions for civil subpoenas, which are subject to SCA prohibitions.  *See In re Super Vitaminas, S.A.*, No. 17-MC-80125-SVK, 2017 WL 5571037, at *3 (N.D. Cal. Nov. 20, 2017) (citation omitted).  Providers can, however, disclose "a record or other information pertaining to a subscriber to or customer of" their services "to any person other than a governmental entity."  18 U.S.C. § 2702(c); *see also Mintz,* 885 F. Supp. 2d at 993 (explaining that, because the defendants were not a governmental entity, the SCA did not prevent AT&T from divulging subscriber information to them).

Plaintiffs seek Doe's account information and the content of any communications to, from, or concerning Doe's account.  Opp'n Ex. 1 at 9–11.  Pursuant to the SCA, Discord cannot release the content of a message without consent from the sender or receiver of that message.  18 U.S.C. § 2702(a).  In their opposition, Plaintiffs recognize that they "require the consent of [a] user (or, theoretically but unrealistically, the consent of a sender or recipient of every message to or from that user)."  Opposition at 15.  By filing her present motion, Doe has made clear that she does not give consent to Discord to release her messages.  Unless Plaintiffs receive consent from the recipients of Doe's communications, or from the senders of messages sent to Doe, Discord is prohibited from disclosing to Plaintiffs any of Doe's communications and documents.  To the extent that Document Request 7 requests the content of Doe's communications, and Discord does not receive consent from either the sender or a recipient, the subpoena violates the SCA, the motion is partially GRANTED, and the subpoena is QUASHED as to those communications.  Nonetheless, if Plaintiffs receive consent from other Discord users to disclose the content of their communications, and these users have exchanged messages with Doe, disclosure of these messages would not violate the SCA.  *See Super Vitaminas*, 2017 WL 5571037 at *4 (holding that divulging email content did not violate the SCA where employees who used the email accounts gave consent).

1    Nothing in the SCA prohibits Discord from disclosing Doe's account information to

2    Plaintiffs, *see* 18 U.S.C. §2702(c)(6); therefore, to the extent that Document Request 7 requests

3    Doe's account information, the subpoena does not violate the SCA.  The Court therefore turns to

4    the questions of whether release of Doe's account information to Plaintiffs is overbroad and

5    disproportionate to the needs of the case, and whether it violates Doe's First Amendment rights.

6                   **2.      Disclosure of Doe's Account Information Is Not Overbroad,**
                   **Disproportionate, or Unduly Burdensome**
7

8    Doe argues that the subpoena is "grossly disproportionate, overbroad, and unduly

9    burdensome."  Mot. at 14.  Disclosure of Doe's account information is the only portion of the

10   subpoena that Doe has standing to challenge and that does not violate the SCA.  Disclosure of this

11   limited information is not overbroad, unduly burdensome or disproportionate to the needs of the

12   case.

13   Rule 26 of the Federal Rules of Civil Procedure provides:

14               . . . Parties may obtain discovery regarding any nonprivileged matter
                 that is relevant to any party's claim or defense and proportional to
15               the needs of the case, considering the importance of the issues at
                 stake in the action, the amount in controversy, the parties' relative
16               access to the information, the parties' resources, the importance of
                 the discovery in solving the issues, and whether the burden or
17               expense of the proposed discovery outweighs its likely benefits.

18   Fed. R. Civ. P. 26(b)(1).

19   As a starting point, to the extent that Doe argues that the requests are unduly burdensome,

20   the only burden in responding to the subpoena rests with Discord, the target of the subpoena.  Doe

21   lacks standing to object to burden on Discord.

22   All of Doe's arguments for overbreadth and proportionality relate to disclosure of the

23   content of Doe's messages, not to disclosure of Doe's account information.[13]  *See* Mot. at 14–16.

24   Because the Court has determined that, without sender or recipient consent, release of the content

25   of Doe's communications violates the SCA, it is no longer necessary to determine whether that

26

27   ───────────────────────

28   [13] For example, Doe argues that because Document Request 7 seeks all communications from
     several Discord accounts, regardless of the subject, it "calls for private communications on both
     personal and private matters with no bearing whatsoever on this case."  Mot. at 15.

United States District Court
Northern District of California

1    portion of the subpoena is overbroad and proportional to the needs of the case. [14]  To the extent

2    that Doe is arguing that disclosure of her account information is overbroad and disproportionate,

3    the Court does not agree.  Communications that were already leaked indicate that at minimum

4    Doe, or an individual managing the "kristall.night" account, discussed preparations for the event.

5    *See generally* Libling Decl. Exs. 5-16.[15]  Such participation supports an inference that Doe could

6    be a witness with information relevant to Plaintiffs' case.  Her identifying information, therefore,

7    is not disproportionate or overbroad.  *See Drummond Co., Inc. v. Collingsworth*, No. 13-mc-

8    80169-JST (JCS), 2013 WL 6074157, at *10 (N.D. Cal. Nov. 18, 2013) (holding that identifying

9    information of email account holders met Rule 26's relevancy standard so that the plaintiff could

10   find individuals who might have received payments from the defendants).

### 3.    Plaintiffs' Interest in Doe's Identity Outweighs Doe's First Amendment Interest in Anonymity

13          Doe argues that the subpoena violates her First Amendment rights to anonymous speech.

14   Mot. at 6–11.  The Court agrees that disclosure of Doe's identity implicates her right to speak

15   anonymously.  After balancing the interests, however, and given the existence of the protective

16   order entered by the Western District of Virginia, the importance to the case of disclosing Doe's

17   identity outweighs any burden on this right.

---

[14] While some of Doe's communications may also be produced with the consent of other parties to those communications, Doe has made no showing that this Court should bar such parties from voluntarily consenting to the production of communications to which they were privy.

[15] For example, on July 21, 2017, an individual using the account "kristall.night" posted what appears to be specific instructions on the Charlottesville 2.0 server:

> Do not bring: regular cell phone (if you do, make sure you have a good lock on it), weapons you're inexperienced with using in a fight in a crowded area, flip flops/sandals, masks, contact lenses, illegal substances.

> Do bring: water, tourniquet if you have one, a camera that you don't mind being damaged or stolen, good boots/shoes, baby shampoo, shields if you have them, a helmet, banners/flags, a good flag pole, a way to contact the group you came with, sunglasses, knowledge of local laws & exfil plans, etc…

Libling Decl. Ex. 11 at 4.  On August 12, 2017, an individual using the "kristall.night" account posted updates to the Charlottesville 2.0 server, including "shield wall should be at the ready in case people get pushed in your direction."  Libling Decl. Ex. 16 at 5.

United States District Court
Northern District of California

1   The Supreme Court has recognized that "an author's decision to remain anonymous, like

2   other decisions concerning omissions or additions to the content of a publication, is an aspect of

3   the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n*,

4   514 U.S. 334, 352 (1995). It is well established that this decision to remain anonymous extends to

5   anonymous speech made on the internet. *In re Anonymous Speakers*, 661 F.3d 1168, 1173 (9th

6   Cir. 2011) ("[O]nline speech stands on the same footing as other speech—there is 'no basis for

7   qualifying the level of First Amendment scrutiny that should be applied' to online speech."

8   (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997))). As the Ninth Circuit has

9   explained, "the ability to speak anonymously on the Internet promotes the robust exchange of

10   ideas and allows individuals to express themselves freely without ' . . . concern about social

11   ostracism.'" *Id*. (quoting *McIntyre*, 514 U.S. at 341–42).

12   First Amendment protection of anonymous speech "is not unlimited, however, and the

13   degree of scrutiny varies depending on the circumstances and the type of speech at issue." *Id*.

14   Federal and state courts have used a "variety of standards to benchmark whether an anonymous

15   speaker's identity should be revealed." *Id.* at 1175. Doe argues that the Court should apply the

16   standard laid out in *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001). While

17   Plaintiffs are correct in their assertion that the Ninth Circuit has not explicitly approved this test,

18   Plaintiffs do not suggest an alternative. Because both parties' arguments address the

19   *2TheMart.com* factor test and neither party suggests a more appropriate test, the Court will applies

20   that test here.

21   In *2TheMart.com*, the defendant in a civil lawsuit alleging fraud on the market sought the

22   identity of more than twenty anonymous speakers in support of an affirmative defense.

23   *2TheMart.com*, 140 F. Supp. 2d at 1090. The defendants issued a subpoena to the internet service

24   provider holding the pertinent identifying information. *Id*. at 1089. After sending an email to the

25   anonymous speakers to inform them of the subpoena, one speaker filed a motion to quash,

26   contending that the subpoena violated his or her right to anonymous speech. *Id*. at 1091. The

27   court reasoned that in that context, "[t]he standard for disclosing the identity of a non-party

28   witness must be higher . . . [because] [w]hen the anonymous Internet user is not a party to the

United States District Court
Northern District of California

21

case, the litigation can go forward without the disclosure of their identity." *Id.* at 1095.

"Therefore," the court held, "non-party disclosure is only appropriate in the exceptional case

where the compelling need for the discovery sought outweighs the First Amendment rights of the

anonymous speaker." *Id.* The court articulated four factors to consider in determining whether

this standard has been met, asking whether:

> (1) the subpoena seeking the information was issued in good faith
> and not for any improper purpose, (2) the information sought relates
> to a core claim or defense, (3) the identifying information is directly
> and materially relevant to that claim or defense, and (4) information
> sufficient to establish or disprove that claim or defense is
> unavailable from any other source.

*Id.* It explained that the standard "provides a flexible framework" in which the weight of each

factor depends on the circumstances of the case. *Id.*[16]

a.      The Subpoena Was Not Issued in Bad Faith

        In *2TheMart.com*, the court did "not conclude that [the] subpoena was brought in bad faith

or for an improper purpose" because it would be reasonable to believe that the information sought

was relevant to their affirmative defense. *Id.* Nevertheless, because the original subpoena was

"extremely broad" and would have required disclosure of irrelevant and personal information, the

court held in its discussion of good or bad faith that this "apparent disregard for the privacy and

the First Amendment rights of online users . . . weighs against [the defendant] in balancing the

interests here." *Id.* at 1096. Here, Doe argues that because Plaintiffs have not named Doe

defendants in their complaint, Plaintiffs do not aim to uncover additional defendants and it is clear

the subpoena was issued in bad faith as a "fishing expedition with the ultimate goal of destroying

the lives of people Plaintiffs do not like." Mot. at 10. Doe's argument in her motion does not

---

[16] The *2TheMart.com* decision includes conflicting statements as to whether this list describes elements that must all be established or factors to be weighed against one another. *Compare* 140 F. Supp. 2d at 1097 ("[T]he party seeking the information must demonstrate, by a clear showing on the record, that four requirements are met . . . .") *with id.* at 1095 ("The Court shall give weight to each of these factors as the court determines is appropriate under the circumstances of each case.") *and id.* at 1097 ("The Court has weighed these factors in light of the present facts."). Although the distinction does not affect the outcome here because Plaintiffs' request for Doe's identifying information satisfied all four factors or elements, this Court is of the view that, in the absence of binding authority on the subject, the more flexible approach of weighing factors based on the circumstances of a given case is preferable.

United States District Court
Northern District of California

acknowledge the protective order in place to prevent precisely this type of harm.  The protective order allows any party or third party to designate information as "confidential" or "highly confidential."  Libling Decl. Ex. 3 at 1–2.  Under either designation, disclosure is limited to individuals involved in the case and the information cannot be used for any other purpose other than the action.  *Id.* at 3–5.  To the extent that Doe's information can be designated as confidential or highly confidential, the protective order therefore prohibits Plaintiffs from using such information to "destroy[]" Doe's life.

The relevance of the account information at issue here also supports an inference of good faith, in contrast to irrelevant communications sought in *2TheMart.com*.  In that case, the defendants sought to prove that their actions had not caused their stock value to fall.  *2TheMart.com*, 140 F. Supp. 2d at 1095.  The court concluded that the personal emails that the internet service provider would have been required to disclose under the subpoena would clearly have no relevance to the case, and that therefore this factor weighed against disclosure.  *Id.* at 1095–96.  Here, Plaintiffs seek to uncover what they allege is a conspiracy to engage in violence based on racial animus.  Opp'n at 2.  For at least some of their claims, Plaintiffs have the burden of proving that the conspiracy had "the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," 42 U.S.C. § 1985(3), and that Defendants engaged in misconduct "motivated by racial, religious, or ethnic animosity," Va. Code § 8.01-42.1(A).  The reach of this burden includes messages that may show the animosity of the conspirators toward racial, religious, or ethnic groups, even if those messages do not directly concern the planning of the specific event in question.  Accordingly, while there may be some personal messages that are entirely irrelevant to the controversy, testimony and other discovery from other individuals involved in planning the Unite the Right event is highly relevant to understanding Defendants' purpose and intent in organizing it, and Plaintiffs would for the most part be unable to obtain such testimony without knowing the identities of those individuals.  This is unlike the personal communications sought in *2TheMart.com*, which had "no relevance to the issues raised in the lawsuit."  140 F. Supp. 2d at 1095–96.

United States District Court
Northern District of California

23

Here, Plaintiffs could reasonably believe that Doe's communications would be relevant to their claims, negating an inference of bad faith in this case. The protective order also provides a safeguard against any improper use of Doe's information. This factor therefore weighs in favor of disclosure.

### b.  The Information Relates to a Core Claim

The *2TheMart.com* court concluded that the information did not relate to a core claim or defense because it was pertinent to only one of twenty-seven affirmative defenses. *2TheMart.com*, 140 F. Supp. 2d at 1096. That defense was "a generalized assertion of the lack of causation," which the court did not consider to be a defense that went "to the heart of the matter." *Id*. Here, the information sought goes to proving the nature of the alleged conspiracy, which is one of the Plaintiffs' core claims. Plaintiffs have presented evidence suggesting that Doe is a coconspirator connected to this core claim. Thus, this factor weights in favor of disclosure as well.

### c.  The Information is Materially Relevant

While Rule 26 permits broad discovery for information that reasonably appears relevant, when First Amendment rights are implicated "a higher threshold of relevancy must be imposed." *2TheMart.com*, 140 F. Supp. 2d at 1096. The information must be "directly and materially relevant to a core claim or defense" in order to outweigh Doe's First Amendment right to anonymous speech. *Id*. Here, uncovering potential witnesses and participants is an integral part of Plaintiffs' case, particularly because Plaintiffs have reason to believe Doe is a coconspirator.

As discussed above, in considering the extent to which Doe's interest in anonymity weights against the relevance of her account information, the protective order mitigates the risk of harm to Doe and further tips this factor in favor of disclosure. Because it is possible for Doe's identifying information to be designated as highly confidential so that not even Plaintiffs would have access to her information, and the leaked messages show she likely was involved in planning the event, the third factor weighs towards divulging her Discord account information.

### d.  The Information Is Not Available from Another Source

In *2TheMart.com*, the court found that, because the identity of the anonymous speakers was not relevant to a core defense, and the messages themselves were available to the public

24

1   online, the factor of whether the information at issue was available from another source weighed

2   against disclosure.  *Id*. at 1097.  In this case, however, Discord and Doe herself are the only known

3   sources of Doe's identifying information.  Furthermore, Doe's apparent involvement with

4   planning the August 11 and 12 events indicate that she has information that is highly relevant to

5   Plaintiffs' case.  Except for Defendants themselves, whose account of the alleged conspiracy

6   Plaintiffs are entitled to test, the information that Doe has about how the Unite the Right event was

7   planned may not be available from another source.  This factor also weighs in favor of disclosure.

8                                          * * *

9          Each of the *2TheMart.com* factors weighs in favor of disclosing Doe's identity.  While

10  Doe has a right to anonymous speech online, her identity is likely highly relevant to Plaintiffs'

11  core claim given her apparent involvement in the August 11 and 12 events.  The information is

12  unavailable from any source other than Discord.  Further, if the information at issue is treated as

13  highly confidential under the protective order, Doe's identity can be shielded from even Plaintiffs

14  in this case.  While the subpoena implicates Doe's First Amendment right to anonymous speech,

15  the balance of interests tips in favor of disclosing Doe's identifying information as highly

16  confidential pursuant to the protective order.

17          **4.    Plaintiffs' Interest in Doe's Account Information Outweighs Any**
                    **Impact on Doe's Right to Association**
18

19         Doe argues that the subpoena violates her First Amendment rights to association.  Mot. at

20  11–14.  Like Doe's right to speak anonymously, the Court agrees that disclosure of Doe's identity

21  implicates her right to association.  After balancing the competing interests, and taking into

22  account the availability of the protective order, the importance to the case of disclosing Doe's

23  account information outweighs any burden on this right.

24         The right to associate is a right, which, "like free speech, lies at the foundation of a free

25  society."  *Buckley v. Valeo*, 424 U.S. 1, 25 (1976).  The Supreme Court "has recognized the vital

26  relationship between freedom to associate and privacy in one's associations."  *NAACP v.*

27  *Alabama*, 357 U.S. 449, 462 (1958).  This is particularly true where the views espoused by the

28  group in question are unpopular.  *See id.* ("Inviolability of privacy in group association may in

United States District Court
Northern District of California

1   many circumstances be indispensable to preservation of freedom of association, particularly where

2   a group espouses dissident beliefs.").  Similar to the right to speak anonymously, the right to

3   association is not absolute, and can permissibly be limited "by regulations adopted to serve

4   compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through

5   means significantly less restrictive of associational freedoms."  *Roberts v. U.S. Jaycees*, 468 U.S.

6   609, 623 (1984).

7           The Ninth Circuit applies the test articulated in *Brock v. Local 375, Plumbers International*

8   *Union of America, AFL-CIO*, 860 F.2d 346 (9th Cir. 1988), in evaluating whether a subpoena

9   violates an individual's First Amendment right to association.  First, Doe has the burden of

10  establishing a prima facie case of infringement.  *Id.* at 349.  She must "demonstrate that

11  enforcement of the subpoenas will result in (1) harassment, membership withdrawal, or

12  discouragement of new members, or (2) other consequences which objectively suggest an impact

13  on, or 'chilling' of, the members' associational rights."  *Id.* at 350 (citation omitted).  If Doe can

14  establish a prima facie case, the burden shifts to Plaintiffs to show that "the information sought

15  through the subpoenas is rationally related to a compelling governmental[17] interest."  *Id.* (citation

16  omitted).  The court weighs the "'burdens imposed on individuals and associations against the

17  significance of the . . . interest in disclosure.'"  *Perry v. Schwarzenegger*, 591 F.3d 1126, 1140–41

18  (9th Cir. 2009) (quoting *AFL-CIO v. FEC*, 333 F.3d 168, 176 (D.C. Cir. 2003)).

19          Doe has met her burden of establishing a prima facie case of infringement.  It is clear that

20  many members of the "alt-right" feel free to speak online in part because of their ability to hide

21  behind an anonymous username.  The possibility of disclosure, therefore, even if limited by a

22  protective order, could deter new members from joining the group or cause current members to

23  withdraw.  It could also discourage those with similar opinions to refrain from espousing their

24  beliefs online, creating a chilling effect on the "alt-right" message.

25          Because Doe has established a prima facie case, the burden shifts to Plaintiffs to show that

26

27  _____

28  [17] In cases involving subpoenas sought by private parties, "the need for such discovery" is the
interest to be weighed against the potential chilling effect on free association.  *See Perry v.
Schwarzenegger*, 591 F.3d 1126, 1140 (9th Cir. 2009)

United States District Court
Northern District of California

the discovery is "rationally related" to a "compelling interest." *Brock*, 860 F.2d at 349.  Plaintiffs

have met that burden.  Discovering Doe's account information is rationally related to obtaining

evidence regarding the alleged violent conspiracy, including evidence of Defendants' intent,

because the leaked messages suggest that "kristall.night" was, at least to some degree, a

coconspirator in planning the events on August 11 and 12.  There is reason to believe that Doe

could be an integral witness in the case, even if not named as a defendant.  As explained above,

only Discord and Doe are known to have access to Doe's information, making Plaintiffs'

subpoena on Discord the "least restrictive means" of obtaining the information, particularly where

Plaintiffs are not currently aware of Doe's identity and thus cannot seek discovery from her

directly.  Because disclosure of Doe's account information is rationally related to Plaintiffs'

claims, Plaintiffs have also met their burden.

　　　　Next, the court must balance the interests.  "This balancing may take into account, for

example, the importance of the litigation . . . , the centrality of the information sought to the issues

in the case . . . , the existence of less intrusive means of obtaining the information . . . , and the

substantiality of the First Amendment interests at stake . . . ." *Id.* (citations omitted).  The Virginia

Action is an important case that will likely continue to test the First Amendment's boundaries.

The Western District of Virginia will likely decide whether the speech at issue is truly political

speech, or speech that incited violence and caused physical and emotional injury to Plaintiffs.  At

stake in this motion, however, is Doe's account information, which appears to be important to the

case due to her apparent involvement in planning the deadly August 11 and 12 events.  While even

limited disclosure of this information may create some chilling effect, the protections available

through a designation of "highly confidential" mitigate that harm, and Plaintiffs' interest in this

information, which is relevant to testing their claims of an alleged violent conspiracy based on

racial and religious animus, outweighs the potential harm to Doe's right to association.

## IV.　CONCLUSION

　　　　For the reasons discussed above, Doe's motion is DENIED for lack of standing with

respect to all information sought from Discord other than information regarding the account

"krsitall.night."  The motion is GRANTED in part and the subpoena is QUASHED to the limited

27

extent that, as Plaintiffs acknowledge, Plaintiffs cannot obtain the content of any communications without the affirmative consent of at least one party to such communications.  The motion is DENIED with respect to information related to Doe's account other than the content of messages, which the parties are ORDERED to treat as "highly confidential" under the protective order. Unless Plaintiffs seek and obtain an order to the contrary from the Western District of Virginia, no personal identifying information obtained through this subpoena may be disclosed except as permitted by the protective order for "highly confidential" information.

**IT IS SO ORDERED.**

Dated: August 6, 2018

_____
JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California